529 A.2d 1153

Susan W. Harman, Petitioner *v.* Commonwealth of Pennsylvania, Housing Finance Agency, Homeowners' Emergency Mortgage Assistance Program, Respondent.

Submitted on briefs June 9, 1986, to Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Raymond Radakovish,* for petitioner.

*Lawana M. Johns,* for respondent.

OPINION BY JUDGE BLATT, August 7, 1987:

Susan W. Harman (petitioner) petitions for review of a Pennsylvania Housing Finance Agency (Agency) hearing examiner's order, which rejected her application for assistance under the Homeowners' Emergency Mortgage Assistance Program.

On May 14, 1985 the petitioner submitted an application to the Agency for mortgage assistance,[1] and she was notified by letter on September 17, 1985 that her application had been denied because there was "[n]o reasonable prospect of Mortgagor resuming full mortgage payments within 36 months and paying mortgage by maturity." The petitioner appealed, and, after a hearing, the hearing examiner issued an order on February 14, 1985 which affirmed the original agency determination.

Preliminarily we note that our scope of review is limited to determining whether or not constitutional rights have been violated, an error of law has been committed, or a necessary factual finding is unsupported by substantial evidence. *Johnson v. Pennsylvania Housing Finance Agency,* 99 Pa. Commonwealth Ct. 77, 512 A.2d 1319 (1986).

The petitioner initially contends that Article IV-C of the Housing Finance Agency Law (Act), entitled

---

[1] The petitioner had been delinquent on her mortgage payments from January 1983 to May 1984.

Homeowners' Emergency Assistance (Article IV-C)[2] is unconstitutional. She alleges that the statute lacks the specificity required in order for the legislature to make an adequate delegation of power to the Agency, and that Section 404-C of Article IV-C, 35 P.S. §1680.404c, is internally inconsistent, thereby rendering any action taken pursuant to that section arbitrary and capricious.

Our Supreme Court has held, however, that:

> While the legislature cannot delegate power to make a law, it may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act.

*Belovsky v. Redevelopment Authority of City of Philadelphia*, 357 Pa. 329, 342, 54 A.2d 277, 284 (1947). Accordingly, not all of the administrative details must be specifically enumerated in the statute. *Gilligan v. Pennsylvania Horse Racing Commission*, 492 Pa. 92, 422 A.2d 487 (1980).

Section 404-C pertinently provides that:

> (a) No assistance may be made with respect to a mortgage under this article unless all of the following are established:
>
> (1) The property securing the mortgage, or other security interest in the case of units in cooperative or condominium projects, is a one-family residence, or two-family owner-occupied residence including one-family units in a condominium project or a membership interest and occupancy agreement in a cooperative housing

---

[2] Act of December 3, 1959, P.L. 1688, *as amended,* added by Section 2 of the Act of December 23, 1983, P.L. 385, *as amended,* 35 P.S. §§1680.401c-1680-410c.

project, is the principal residence of the mortgagor and is located in this Commonwealth.

(2)(i)  Any mortgagee has indicated to the mortgagor its intention to foreclose; and

(ii)  payments under any mortgage have been contractually delinquent for at least sixty (60) days.

. . . .

(5)  The agency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within thirty-six (36) months after the beginning of the period for which assistance payments are provided under this article and pay the mortgage or mortgages in full by its maturity date or by a later date agreed to by the mortgagee or mortgagees for completing mortgage payments.

. . . .

(8)  The agency has determined, based on the mortgagor's financial statement, that the mortgagor has insufficient household income or net worth to correct the delinquency or delinquencies within a reasonable period of time and make full mortgage payments.

. . . .

In *Latella v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 14, 459 A.2d 464 (1983), we held that a legislative delegation of power to an administrative agency to determine the existence or nonexistence of a statutorily described fact or status is constitutionally permissible. In the statute here concerned, the legislature has enumerated and detailed eligibility requirements for mortgage assistance in Section 404-C, and thereby conferred upon the Agency the authority and discretion necessary for the execution of the law. And we believe that Section 404-C amply sets forth

the primary standards for determining eligibility and merely leaves the details of administration and fact-finding functions to the Agency. Consequently, we can find no unconstitutional delegation of legislative authority here. *Belovsky; Latella; see also, Johnson v. Pennsylvania Housing Finance Agency,* 453 Pa. 329, 309 A.2d 528 (1973) *(Joyce Johnson).*

Still, having found that Section 404-C does not effect an unconstitutional delegation of power, we must yet determine whether or not paragraph 5 of that section conflicts with paragraph 2(ii) and paragraph 8.

The petitioner contends that any action pursuant to Section 404-C would be arbitrary and capricious because qualification for assistance under paragraphs 2(ii) and 8 would mean automatic disqualification under paragraph 5, and that a current delinquency *per se* negates the possibility of paying the mortgage by maturity. We disagree.

In the preamble to Article IV-C, the purpose of the legislation is stated as being "to establish a program which will, through emergency mortgage assistance payments, prevent wide-spread foreclosures and distress sales of homes which result from default caused by circumstances beyond a homeowner's control." In spite of this statutory expression of purpose, the petitioner argues that the legislature promulgated a statute which contained internally inconsistent requirements for obtaining mortgage assistance. In concluding, however, that the delinquency provisions of paragraphs 2(ii) and 8 of Section 404-C render it impossible to pay the mortgage in full by maturity under paragraph 5, the petitioner ignores Section 405-C of Article IV-C,[3] which

---

[3] Section 405-C, 35 P.S. §1680.405c, pertinently provides that:
    (a) If the agency determines that a mortgagor is eligible for assistance under this article, the agency shall pay directly to each mortgagee secured by the mortgagor's real

provides that payments by the Agency to the mortgagee shall be in an amount to make the mortgage payments current. An applicant, therefore, can satisfy the delinquency requirements of paragraphs 2(ii) and 8 and the eligibility requirements of paragraph 5 of Section 404-C by demonstrating a sound income history.

estate payments on behalf of the mortgagor. The agency shall pay to each mortgagee the full amount then due to that mortgagee pursuant to the terms of the mortgage without regard to any acceleration under the mortgage, or the full amount of any alternative mortgage payments agreed to by the mortgagee and mortgagor. This amount shall include, but not be limited to, the amount of principal, interest, taxes, assessments, ground rents, hazard insurance, any mortgage insurance or credit insurance premiums. The initial payment made by the agency to each mortgagee shall be an amount which makes each mortgage current and pays reasonable costs and reasonable attorneys' fees already incurred by such mortgagee.

(b) After the agency has paid any and all arrearages pursuant to subsection (a) to each mortgagee, the mortgagor may be entitled to monthly mortgage assistance payments pursuant to this article. A mortgagor on whose behalf the agency is making mortgage assistance payments shall pay monthly payments to the agency. Such payments shall be in an amount which will cause the mortgagor's total housing expense not to exceed thirty-five (35) percent of the mortgagor's net effective income. This shall be the maximum amount the mortgagor can be required to pay during the thirty-six (36) months each mortgage payment is due to each mortgagee. Upon receipt of this payment form the mortgagor, the agency or its duly authorized agent shall send the total mortgage payment directly to each mortgagee. 'Housing expense' shall be defined as the sum of the mortgagor's monthly maintenance, utility, hazard insurance expense, taxes and required mortgage payments, including escrows. 'Net effective income' shall be defined as gross household income less city, State and Federal income and social security taxes. 'Gross household income' means the total income of a husband, wife and

The petitioner further contends that her monthly income was $1,800, that her housing expenses were $795 per month,[4] and, therefore, that the hearing examiner abused his discretion in concluding that her monthly obligations exceeded fifty percent of her monthly income. She argues that her monthly income consisted of a $1,100 salary from her employer, $300 from self-employment as a decorator, $125 in child support, and $275 from decorating contracts effective as of the date of the hearing,[5] or a total of approximately $1,800 per month. The hearing examiner, however, in computing the petitioner's income of $1,525 per month, made the following relevant findings:

10. On January 5, 1984, [the petitioner] started working with the University of Pittsburgh and is currently a customer service supervisor with a net income of $1,100 per month.

11. In August 1984, [the petitioner] started decorating again with a net income of $300 per month.

. . . .

14. [The petitioner] stated that child support payments from her ex-husband in the

---

children residing in the same household as the applicant and any other resident of the household declared by the mortgagor as a dependent for Federal tax purposes. If the mortgagor is receiving emergency mortgage assistance under a program other than that established in this article, the amount of the payment he or she is required to make to the agency under this article shall take into consideration the amount of assistance he is receiving under such other programs.

[4] The petitioner does not contest the finding of $795 per month in housing expenses.

[5] The petitioner indicated that in addition to $300 per month from her decorating business, she had signed contracts that would bring that amount to $575 per month.

amount of $125 per month resumed in June 1984.

Accordingly, the only income at issue is the $275 per month from decorating contracts, which the petitioner contends that the hearing examiner should have included in his calculation, thus bringing her total monthly income to $1800. She premises this contention on finding of fact number twelve which provides that "[the petitioner] stated that she has signed contracts related to her decorating business that could lead to $1,800 per month net income."

Although the hearing examiner obviously considered the petitioner's possible future income from the decorating contracts, this finding is merely a reiteration of the petitioner's own testimony, and we can find no abuse of discretion in the examiner's refusing to include a possibility of future income in a calculation of present monthly net income,[6] particularly where, as here, there was conflicting testimony concerning the income derived from the petitioner's decorating business.[7]

---

[6] Similarly, for purposes of determining whether or not the circumstances causing default are beyond the homeowner's control, Agency regulations provide that "the Agency will consider the homeowner's credit history, employment record, assets, *current and past household income,* net worth and other relevant factors." 16 Pa. Code §40. 202(f)(3) (emphasis added).

[7] The petitioner's conflicting testimony concerning her decorating income is as follows:

QHE: And what . . . would you approximate was your income since August of '84 from your decorating business per month?

AA: Ah . . . well, bout [sic] $300 a month.

QHE: O.K. $300 per month . . .

AA: And it's going up all the time. I'm getting more and more (inaudible)

. . . .

QHE: If you averaged your income over a month . . . over the past six or eight months Mrs. Harman, would you . . . ah . . . and you added your decorating income to your

The petitioner further argues that, because the hearing examiner found that she had resumed full mortgage payments (finding of fact number seven), and because that finding is supported by the testimony of the petitioner and her accountant, it was arbitrary and capricious and an abuse of discretion for the examiner to conclude that she could not resume full mortgage payments within thirty-six months and pay the mortgage in full by maturity. However, the hearing examiner, in affirming the Agency's denial of assistance, had stated that the "[a]ppellant's monthly obligations exceed fifty percent of her monthly income which creates a re-

---

$1,100 a month from the University of Pittsburgh, what would you say your total net monthly income would be? Approximately $1400?

AA: Oh no, much more.

QHE: Per month I mean.

AA: Yeah, I'm talking per month. About $1800 to $2000.

QHE: Well, you first indicated that you were getting about $1100 per month from the University of Pittsburgh net and that you have averaged about $300 per month since August of '84. That adds up to about $1400 per month.

AA: That's correct. That's as of now, but I thought your statement was my projected income which I do project with these jobs that I have signed contracts for of being, you know, in excess of $1800 to $2000 a month profit . . . I mean net income.

. . . .

QHE: In June of '84 child support resumed and that . . . and it resumed at $125 per month?

AA: That's correct.

QHE: And that would be added into the $1800 per month that you talked about earlier or the . . . ah . . . so if we added that $125 per month into your $1100 per month plus the $300 per month that you've averaged since August of '84 you'd probably have about $1500 per month income?

AA: That's correct.

butable [sic] presumption that she cannot resume full mortgage payments in 36 months and pay the mortgage in full by maturity." It is true, of course, that the Agency's interpretation of the Law is entitled to great weight and should be overturned only if its construction is clearly erroneous, *Melrose v. Pennsylvania Housing Finance Agency Homeowners' Emergency Mortgage Assistance Program,* 98 Pa. Commonwealth Ct. 518, 511 A.2d 290 (1986). Nonetheless, we can find no basis for the hearing examiner's "rebuttable presumption" either in the statute or the relevant regulations.[8]

The objective of Article IV-C is remedial and humanitarian, *see Joyce Johnson.* We will, therefore, interpret its assistance provisions liberally and broadly to effect its purposes. Section 1928 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1928; *see* Section 601a of the Act, 35 P.S. §1680.601a; *see also Penn Hills School District v. Unemployment Compensation Board of Review,* 496 Pa. 620, 437 A.2d 1213 (1981). And, of course, the grant or denial of assistance under Section 404-C must be determined on an individual basis. We believe, therefore, that, while the petitioner may have failed to establish sufficient monthly income to qualify for assistance, this decision may not be based solely on a presumption not provided for in the statute or regulations.

Accordingly, we will remand this matter to the Agency to determine, on the basis of the petitioner's individual circumstances, whether or not she qualifies for assistance under Section 404-C without resort to, or re-

---

[8] We cannot agree with the Agency's argument that Section 405-C provides guidance for a fair expense-income ratio. That section pertains to the amount which the Agency may collect from the mortgagor during the thirty-six months in which the mortgagor is eligible for assistance, rather than to the standards necessary for establishing eligibility.

liance on, the "rebuttable presumption" utilized here by the hearing examiner.

ORDER

AND NOW, this 7th day of August, 1987, the order of the Pennsylvania Housing Finance Agency is vacated and this matter is remanded for a determination as to whether or not the petitioner qualifies for mortgage assistance under the Homeowners' Emergency Mortgage Assistance Act without resort to, or reliance on, the "rebuttable presumption" utilized by the hearing examiner.

Jurisdiction relinquished.