553 A.2d 1037

Hillcrest Home, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 31, 1988, before Judges DOYLE and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Charles O. Barto, Jr., Charles O. Barto, Jr. and Associates,* for petitioner.

*Cynthia White Williams,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, February 2, 1989:

Hillcrest Home, Inc. (Hillcrest) petitions for review of an order of the Secretary of the Department of Public Welfare (DPW) vacating the order of DPW's Office of Hearings and Appeals (OHA) which sustained Hillcrest's administrative appeal. We reverse the Secretary's order.

Hillcrest is a long-term-care provider which participated in Pennsylvania's Medical Assistance Program. On

January 8, 1985, Hillcrest sold its long-term-care nursing facility and realized a gain of $753,000 on the sale. Pursuant to DPW regulation Section 1181.259(1) of the Pennsylvania Code (Code), 55 Pa. Code §1181.259(1), Hillcrest offset gain realized on the sale against allowable depreciation expense on its final cost report for the period from July 1, 1984 through January 8, 1985, a truncated fiscal year. Section 1181.259(1) provides in part, "All gains on the sale of fixed . . . assets will offset the facility's total depreciation expense in the *year* that the asset was . . . sold . . . " (emphasis added). In a subsequent audit by DPW of Hillcrest's cost report, DPW offset the gain realized from the sale against the facility's depreciation expense for the year of sale, *i.e.*, the truncated fiscal year as noted, as well as for 173 days from the previously closed and audited report for the prior cost reporting year which ended June 30, 1984, thus recapturing an additional $33,994 of depreciation.

DPW interprets the term "year" as used in Section 1181.259(1) of the Code to mean a calendar year of 365 days from the date of sale, and by such an interpretation it justifies offsetting gain realized on the sale against depreciation not only between July 1, 1984 and January 8, 1985 (the closing fiscal year) but also for 173 days prior to July 1, 1984.

Hillcrest, on the other hand, disagrees with DPW's interpretation of the term "year," and instead contends "year" means simply the "fiscal year" of the sale; Hillcrest argues therefore that DPW would be justified in offsetting depreciation against gain only during the fiscal year, July 1, 1984 through January 8, 1985.

The precise issue, therefore, presented to this Court is the statutory interpretation of the term "year" as it is employed in DPW's regulations. However, a threshold question of the timeliness of the Secretary's action must

be examined and an understanding of the procedural posture of the case is, therefore, necessary before we address the substantive issue. A fair hearing was held on September 30, 1986, and the attorney examiner recommended on September 15, 1987 that Hillcrest's appeal be sustained and that DPW's adjustment be reversed.[1] The Acting Director of the Office of Hearings and Appeals (OHA) adopted the recommendation of the attorney examiner by his order of September 25, 1987. On October 8, 1987, DPW filed a request for reconsideration from the final OHA order. The Secretary of DPW granted DPW's request for reconsideration by an order on November 6, 1987, and finally, on February 22, 1988, vacated the September 25, 1987 OHA order and denied Hillcrest's appeal on the basis of DPW's published clarification of the term "year" found in Medical Assistance Bulletin (MA Bulletin) 36-84-07.[2] Hillcrest filed its appeal on March 23, 1988 and petitions this Court to review the Secretary's

---

[1] The attorney examiner made the following findings of fact in his adjudication.

. . . .

(4) There is no definition of the term "year" within the Medical Assistance regulations.

(5) In every other instance, the term "year" has been interpreted by DPW to mean fiscal year.

(6) On August 31, 1984, DPW through a Medical Assistance Bulletin, issued its interpretation that the term "year" found in 55 Pa. Code Section 1181.259(1) means 365 days prior to the day of sale. The regulation in question [meaning the regulation prior to August 31, 1984] was promulgated effective July 1, 1983. However, the prior regulation concerning the recapture of depreciation *had been applied only to the fiscal year in which the sale occurred*. (Emphasis added.)

(7) In at least one instance, DPW did not apply the regulation in the fashion herein to a sale of a facility which occurred subsequent to July 1, 1983, but prior to the August 31, 1984 Medical Assistance Bulletin.

[2] The MA Bulletin, effective August 31, 1984, contained the following language:

February 22, 1988 order vacating the September 25, 1987 OHA order.[3]

We now consider whether the Secretary of DPW, in granting reconsideration, acted within the time frame prescribed in Section 35.241(d) of the Code, 1 Pa. Code §35.241(d), which provides:

> Unless the agency head acts upon the application for rehearing or reconsideration within 30 days after it is filed, or within the lesser time as may be provided or prescribed by law, the application shall be deemed to have been denied.

Hillcrest argues that the Secretary of DPW failed to act within thirty days of DPW's October 8, 1987 request for reconsideration. Further, it contends that the Secretary, in vacating the OHA order on February 22, 1988, more than four months after DPW's request for reconsideration, failed to "act" within the meaning of the statute. Additionally, Hillcrest argues that the preliminary order dated November 6, 1987, granting DPW reconsideration

---

Chapter 1181.259(1) states: 'All gains on the sale of fixed and movable assets will offset the facility's total depreciation expense in the year that the asset was either sold or retired from service.' *The Department's definition of year in the statement, 'In the year that the asset was sold or retired from service,' is 365 days prior to the date the asset was sold or retired from service. This does not refer to the period of the cost report or to a 365-day calendar year.* (Emphasis added.)

[3] The following is a chronological outline of dates pertinent to our determination in this matter:

9/30/86 Fair hearing

9/15/87 Adjudication of Attorney examiner with recommendation that Hillcrest's appeal be sustained

9/25/87 OHA Order adopting recommendation

10/8/87 DPW's request for reconsideration of OHA order

11/6/87 Secretary's grant of reconsideration

2/22/88 Secretary's Order vacating the OHA order of 9/25/87 and denying Hillcrest's appeal

3/23/88 Petition for Review to this Court by Hillcrest

was only a preliminary order and was insufficient to toll the statute. Hillcrest relies on *Brookline Manor Convalescent Rest Home v. Department of Public Welfare,* 89 Pa. Commonwealth Ct. 630, 492 A.2d 1207 (1985), for the proposition that where the Secretary fails to act within thirty days of the filing date of a petitioner's request for reconsideration, the petition is deemed denied pursuant to Section 35.241(d) of the Code and thus, the order of OHA becomes final.

Hillcrest properly states the above proposition but fails to see that the Secretary's order of November 6, 1987, preliminary though it may seem, did, in fact, grant the reconsideration requested. The Secretary, therefore, did "act" within the meaning of the regulation. The distinction between *Brookline* and the case at bar is that in *Brookline,* the only order appealed to this Court was the Secretary's final order; that order, however, was of no effect because the Secretary had not filed *any* previous order granting reconsideration and, thus, had not acted in a timely manner in ruling upon the petition for reconsideration.

We note first that DPW had fifteen days from the date of the OHA order, September 25, 1987, in which to petition for reconsideration. Section 35.241(a) of the Code, 1 Pa. Code §35.241(a), provides in part:

> An application for ... reconsideration may be filed by a party to a proceeding within 15 days, ... after the issuance of an adjudication or other final order by the agency ....

Its petition, filed on October 8, 1987, was thus clearly timely. And, because the OHA order was not appealed to this Court, *see* Pa. R.A.P. 1701, the Secretary then had thirty days *from the date the Petition for reconsideration was filed* (October 8) to rule upon it. *Keith v. Department of Public Welfare,* 121 Pa. Commonwealth Ct. 405, 551 A.2d 333 (1988). His grant of reconsideration, therefore,

on November 6, 1987 was timely and, accordingly, his actions were not contrary to statute.[4]

We now consider the substantive issue, whether the Secretary committed an error of law in determining that the term "year," as used in 55 Pa. Code §1181.259(1) means "365 days prior to the date the asset was sold ... ."[5] We hold that he did.

Hillcrest argues that DPW's clarification of "year" in the MA Bulletin is not an *interpretation* of a regulation, but rather is an actual regulation itself which is invalid since it was not properly promulgated.

It is well settled that agency regulations must be promulgated pursuant to the procedures found in the Commonwealth Documents Law[6] in order to have the force and effect of law. Statements of policy, on the other hand, need not comply with these procedures. What we must decide, therefore, is whether DPW's published clarification of the term "year" was itself a regulation

---

[4] At oral argument, the Court expressed some concern as to whether the appeal to this Court was timely filed. In light of the propositions set forth in *Keith,* we conclude that it was.

[5] Our scope of review is limited to determining whether the Secretary's order is supported by substantial evidence, whether an error of law was committed or whether there is a constitutional violation. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

[6] The Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§1102-1602. The Commonwealth Documents Law sets out requirements that must be satisfied in order for the regulation to be valid. The requirements are as follows:

> (1) give public notice of its intention to promulgate, amend or repeal any administrative regulation, 45 P.S. §1201; (2) accept, review and consider any submitted written comments, 45 P.S. §1202; (3) obtain legal approval of the proposed regulation, 45 P.S. §1205; and (4) deposit the text of the regulation with the Legislative Reference Bureau for publication, 45 P.S. §1207.

requiring adherence to proper promulgation procedures, or whether it was merely a statement of policy which has no such requirement.[7]

The Supreme Court in *Pennsylvania Human Relations Commission v. Norristown Area School District*, 473 Pa. 334, 374 A.2d 671, 679 (1977), (quoting *Pacific Gas & Electric Co. v. FPC*, 506 F.2d 33 (1974)), has explained the distinction between a substantive regulation and a statement of policy as follows:

> A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy, like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[7] The Commonwealth Documents Law defines regulation and statement of policy as:

> (12) 'Regulation' means any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.
>
> (13) 'Statement of policy' means any document, *except ...* a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document *interpreting* . . . any act of Assembly enforced or administered by such agency. (Emphasis added.)

Sections 102(12), 102(13) of the Commonwealth Documents Law, 45 P.S. §§1102(12), 1102(13).

The critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings. . . . A properly adopted substantive rule establishes a standard of conduct which has the force of law. . . . The underlying policy embodied in the rule is not generally subject to challenge before the agency.

A general statement of policy, on the other hand, does not establish a 'binding norm'. . . . A policy statement announces the agency's tentative intentions for the future.

Under the matrix of the Supreme Court's statements in *Norristown Area School District* we hold that DPW's explanation or "clarification" of its regulation was an invalid attempt to amend a regulation. This is so because DPW was attempting to change the *regulation itself* via this "clarification."

The clear intent of the regulation in question has always been that the term "year" as used in the regulation should be interpreted as "fiscal year." Indeed, the hearing examiner specifically observed:

In the instant case, the Department has sought to define the term 'year' in a manner totally different than other sections of the regulations in which this term is found. Moreover, it seeks to apply an interpretation to this term found in the regulation, although amended in 1983, to which it had applied a very different meaning in the prior regulation. In all other regulations and prior regulations in which the term 'year' is found, the term has referred to a fiscal year period for cost reporting purposes. Certainly, the Department if it wished to apply this new definition to the term 'year', could have easily done so at the

time it amended the regulation in July 1983. As a standard rule of construction, if a term is carried through in the amendment of a regulation, the presumption is that the term carries the same meaning as before. Moreover, in recognition of an instance in which this regulation was not applied in the instant manner to a sale subsequent to July 1, 1983 but prior to August 1984, it cannot be said that the intent of the Department in the July 1, 1983 amendment was to define this term as meaning 365 days prior to the date of sale or retirement of an asset.

. . .

In this case, DPW is advancing an interpretation of the term 'year' clearly inconsistent with all other interpretations given this term within other sections of the regulations. While DPW could have easily applied this definition to the term 'year' when it promulgated its July 1983 regulations, it chose not to do so. This change in interpretation constitutes a drastic and substantial change in interpretation which could not be anticipated at the time these regulations were presented for public review. The interpretation proferred [sic] by the Department is much more than a clarification or statement of policy; it represents a deviation from interpretation consistently and uniformly applied to this term throughout the history of the Medical Assistance Program. As such, it has become a term of art and any intent of the Department to attribute a different interpretation to the term must be clearly and expressly spelled out in the regulations.

Further, there was testimony by a DPW field auditor that, with respect to all other reporting requirements within DPW's regulations, "year" generally refers to a

fiscal year. Hearing of September 30, 1986, N.T. 18-19. Finally, as previously observed, the record indicates at least one instance where DPW considered the period of offset of gain on the sale of a skilled nursing care facility to be the final cost reporting period rather than the 365 day period from the date of sale where the sale occurred after July 1, 1983, and as thus applied, *it was contrary to DPW's own "clarification" after the effective date of its adoption. See* note 1, findings (6) and (7) .

Thus, DPW, by now asserting that the term "year" means calendar year, is attempting to make a substantive change to the regulation, a change which cannot be made by a policy but only, as observed by the hearing examiner, by amending the regulation itself in accordance with the Commonwealth Documents Law. Accordingly, DPW's interpretation is an invalid regulation and the Secretary committed legal error in relying upon it.

Reversed.

ORDER

NOW, February 2, 1989, the order of the Secretary of the Department of Public Welfare in the above-captioned matter is reversed.