MAIN LINE HEALTH, INC., a Pennsylvania not-for-profit corporation, and American Excess Insurance Exchange—Risk Retention Group, Inc., a Vermont reciprocal, Petitioners,

v.

The PENNSYLVANIA MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, John H. Reed, in his capacity as the Director of the Pennsylvania Medical Professional Liability Catastrophe Loss Fund, John H. Reed, M. Diane Koken, Thomas J. Judge, Sr., Joseph Cesare, Joan R. Richards, Howard F. Messer, Charles D. Hummer, Jr., David Zuern, Gary Veshecco, Robert Lohr and Shanin Specter, each in his/her capacity as a Member of the Advisory Board of the Pennsylvania Medical Professional Liability Catastrophe Loss Fund, and the Pennsylvania Property and Casualty Insurance Guaranty Association, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 18, 1999.

Decided Sept. 14, 1999.

Reargument Denied Oct. 14, 1999.

# 67

Elaine Rappaport Lev and Bruce C. Nelson, Chicago, IL, for petitioners.

Guy A. Donatelli, West Chester, for respondents.

Lise Luborsky, Philadelphia, for respondent, the PA Property & Cas. Guar. Assoc.

Before FRIEDMAN, J., LEADBETTER, J., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

The Pennsylvania Medical Professional Liability Catastrophe Loss Fund (CAT Fund), John H. Reed, in his capacity as the Director of the CAT Fund (Director), and John H. Reed, M. Diane Koken, Thomas J. Judge, Sr., Joseph Cesare, Joan R. Richards, Howard F. Messer, Charles D. Hummer, Jr., David Zuern, Gary Veshecco, Robert Lohr and Shanin Specter, each in his/her capacity as a member of the CAT Fund Advisory Board (Advisory Board) (collectively, CAT Fund Respondents) have filed a motion for summary relief (Motion) seeking to dismiss as moot Count I of the First Amended Petition of Main Line Health, Inc. (Main Line) and American Excess Insurance Exchange–

Risk Retention Group, Inc. (AEIX) (together, Petitioners), filed in this court's original jurisdiction. The Pennsylvania Property and Casualty Insurance Guaranty Association (Association) has filed preliminary objections to Count V of the First Amended Petition. Both filings are now before this court for disposition.

## I. First Amended Petition

In Count I of the First Amended Petition, Petitioners allege that the Advisory Board has failed to fulfill its obligation under section 706(e)(3) of the Health Care Services Malpractice Act [1] (Malpractice Act) to adopt reasonable standards for the prompt investigation and settlement of claims. Thus, Petitioners ask this court to issue a writ of mandamus directing the Advisory Board "to adopt the reasonable standards identified in 40 P.S. § 1301.706(e)(3) ... [2] for the prompt investigation and settlement of claims arising under the Health Care Services Malpractice Act." (First Amended Petition filed 5/20/99, Count I.)

In Count V, Petitioners allege that the Association violated section 1803 of The Insurance Company Law of 1921 [3] (Insurance Company Law) by failing to recognize in two cases involving Petitioners that a physician and the professional corporation in which that physician practices are separate and independent insureds and, therefore, are entitled to separate and independent insurance coverage under the Insurance Company Law. Petitioners seek damages against the Association in an amount exceeding $2.4 million, plus interest and costs, and other relief that this court determines to be appropriate and just under the circumstances.

---

1. Act of October 15, 1975, P.L. 390, added by section 6 of the Act of November 26, 1996, P.L. 776, 40 P.S. § 1301.706(e)(3).

2. This ellipsis represents an additional phrase that was added to the "First Amended Petition" filed on May 20, 1999. The addition is not relevant to our analysis or disposition here.

3. Act of May 17, 1921, P.L. 682, added by section 1 of the Act of December 12, 1994, P.L. 1005, *as amended,* 40 P.S. § 991.1803.

## II. CAT Fund Respondents' Motion

■ The CAT Fund Respondents argue in their Motion[4] that Count I of Petitioners' First Amended Petition should be dismissed as moot because the Advisory Board, on April 9, 1999, adopted the guidelines provided for in section 706(e)(3) of the Malpractice Act.[5]

■ Section 706(e)(3) of the Malpractice Act, 40 P.S. § 1301.706(e)(3) (emphasis added), states that the Advisory Board has the power and duty:

> (3) To *adopt* reasonable *standards* for prompt investigation and settlement of claims arising under this act *to include,* but not be limited to:

> (i) Prompt acknowledgment of pertinent communications with respect to claims.

> (ii) Reasonable standards for prompt investigation and settlement of claims.

> (iii) Prompt and reasonable settlement of claims in which liability has become reasonably clear.

> (iv) Fair settlement of all claims.

> (v) Prevention of duplication in formal proof of loss and subsequent verification.

> (vi) Provision of reasonable and accurate explanation of basis for claims denials or settlement offers.

The word "adopt" means "to accept formally and put into effect,"[6] and a "standard" is "something set up and established by authority as a rule for the measure of ... quality."[7] The phrase "to include" indicates that the Advisory Board must "take in ... as part of the whole"[8] the enumerated standards.[9]

4. Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure states that, at any time after the filing of a petition for review in this court's original jurisdiction, this court may "on application enter judgment if the right of the applicant thereto is clear."

5. As a preliminary matter, Petitioners ask this court to deny the Motion as premature. However, this court's file and docket indicate that Petitioners filed their First Amended Petition on March 31, 1999, and that the CAT Fund Respondents filed their Motion on May 3, 1999. Therefore, the Motion is not premature. We realize that Petitioners filed another, slightly different, "First Amended Petition" on May 20, 1999. However, the differences between the two petitions are not relevant here.

In another preliminary matter, Petitioners ask this court to deny the Motion, at least in part, for lack of standing. Petitioners contend that they directed Count I only against the Advisory Board, not against all CAT Fund Respondents. However, in their reply memorandum, the CAT Fund Respondents withdrew the Motion to the extent that it was filed on behalf of CAT Fund Respondents other than the Advisory Board. (*See* Reply Memorandum at 1 n.1.) Therefore, it is not necessary for this court to discuss the matter further.

Petitioners also ask this court to deny the Motion because there is a factual dispute as to whether the standards that the Advisory Board had a duty to adopt under section 706(e)(3) of the Malpractice Act must have the

force of law. It is true that summary relief is not warranted where material issues of fact are in dispute. *State Street Bank & Trust Co. v. Treasury Department*, 712 A.2d 811 (Pa. Cmwlth.1998). However, the dispute described by Petitioners is a legal dispute, not a factual dispute, and, thus, does not require us to deny summary relief.

6. Merriam–Webster's Collegiate Dictionary 16 (10th ed.1997). We note that words and phrases in a statute are to be construed according to rules of grammar and their common and approved usage. Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903.

7. Merriam–Webster's Collegiate Dictionary 1145 (10th ed.1997).

8. Merriam–Webster's Collegiate Dictionary 588 (10th ed.1997).

9. Thus, the Advisory Board must have as standards: (1) to promptly acknowledge pertinent communications with respect to claims; (2) to promptly and reasonably settle claims in which liability has become reasonably clear; (3) to settle all claims fairly; (4) to prevent duplication of the formal proof of loss and subsequent verification; (5) to provide a reasonable and accurate explanation of the basis for claims denials or settlement offers; and (6) other reasonable standards for the prompt investigation and settlement of claims. 40 P.S. §§ 1301.706(e)(3)(i)–1301.706(e)(3)(vi).

Here, the Advisory Board has attached to its Motion as Exhibit D a document entitled "Standards for Prompt Investigation and Settlement of Claims." [10] The document contains seven parts; the first six parts set forth standards relating to the areas listed in sections 706(e)(3)(i)–706(e)(3)(vi). (*See* Motion, Exh. D.) The Advisory Board alleges in its Motion that it adopted this document on April 9, 1999, and, therefore, Count I of the First Amended Petition is moot. (Motion, para. 5.) Petitioners apparently do not dispute that the document was adopted on April 9, 1999. However, Petitioners do dispute the Advisory Board's contention that the document satisfies the requirements of section 706(e)(3) and, therefore, makes Count I moot.

■ Petitioners argue that the document fails to satisfy the requirements of section 706(e)(3) because the so-called standards contained in the document are without the force and effect of law.[11] It is true that the Advisory Board prefaced its standards with a statement indicating that the standards do not have the force and effect of law. The Advisory Board explained that it "was not provided with legislative authority to promulgate regulations [with the force and effect of law]." (Motion, Exh. D at 2.) We agree with the Advisory Board that section 706(e)(3) does not authorize it to promulgate the standards as regulations with the force and effect of law.[12]

The plain language of section 706(e)(3) of the Malpractice Act says only that the Advisory Board has the power to adopt standards. This means that the Advisory Board has the authority to formally accept and put into effect rules to measure the quality of the fund's investigation and settlement of claims. Section 706(e)(3) says *nothing* about the promulgation of regulations. Yet, section 702(a) of the Malpractice Act, 40 P.S. § 1301.702(a), authorizes the director of the CAT Fund to "promulgate rules and regulations relating to procedures for the reporting of claims to the fund." Moreover, section 702(i) of the Malpractice Act, 40 P.S. § 1301.702(i), authorizes the CAT Fund to "promulgate such rules and regulations as are necessary to implement [the] provision [relating to mediation]." Thus, where the legislature intended to authorize the promulgation of regulations, the legislature did so explicitly.

Because the legislature did *not* authorize the promulgation of regulations with the force and effect of law, the Advisory Board fulfilled its duty under section 706(e)(3) by adopting the standards set forth in Exhibit D of the Motion on April 9, 1999. Because the Advisory Board has performed its duty under section 706(e)(3), Count I of Petitioner's First Amended Petition is dismissed as moot.

### III. Association's Preliminary Objections

■ The Association has filed a preliminary objection in the nature of a demurrer with respect to Count V of the First Amended Petition.[13] The Associa-

---

10. Although the document purports to set forth "standards," the Motion refers to these standards as "guidelines." (*See* Motion at paras. 5–7, 9, 11–13.)

11. We note that the "First Amended Petition" filed on May 20, 1999 added language asserting that the standards must have the force and effect of law. *See* Footnote 2 above.

12. "It is well settled that agency regulations must be promulgated pursuant to the procedures found in the Commonwealth Docu-

ments Law [Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. § 1102–1602] in order to have the force and effect of law." *Hillcrest Home, Inc. v. Department of Public Welfare*, 123 Pa.Cmwlth. 289, 553 A.2d 1037, 1040, *appeal denied*, 522 Pa. 614, 563 A.2d 500 (1989).

13. Preliminary objections in the nature of a demurrer admit all well-pleaded facts and all inferences reasonably deduced therefrom. *Commonwealth ex. rel. Fisher v. Allstate Insurance Co.*, 729 A.2d 135 (Pa.Cmwlth.1999).

tion argues that it is immune from liability for any action taken in the performance of its powers and duties under section 1818 of the Insurance Company Law.[14]

■ Section 1818 of the Insurance Company Law states that: "There shall be no liability on the part of and no cause of action of any nature shall arise against . . . the [A]ssociation . . . for any action taken by [it] in the performance of [its] . . . powers and duties." 40 P.S. § 991.1818. The Association has the power and duty to settle and pay "covered claims," to the extent of the Association's obligation, and deny all other claims.[15] A "covered claim" is:

An unpaid claim . . . submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy . . . issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article. . . .

Section 1802 of the Insurance Company Law, 40 P.S. § 991.1802. The Association satisfies its obligation to settle and pay "covered claims" by paying *to the claimant* an amount "not exceeding three hundred thousand ($300,000) dollars *per claimant* . . . ." Section 1803(b)(1)(i)(B) of the Insurance Company Law, 40 P.S. § 991.1803(b)(1)(i)(B) (emphasis added).

Here, Petitioners argue that the Association is *not* immune from liability under section 1818 of the Insurance Company Law because, according to Petitioners, the Association *failed* to perform its duty to pay "covered claims" in two instances set forth in the First Amended Petition. Peti-

tioners allege that, in both cases, the Association failed to recognize a particular physician and the professional corporation in which the physician practiced as separate and independent *insureds*, each entitled to separate and independent coverage under the Insurance Company Law. In other words, Petitioners contend that the Association failed to perform its duty to pay the claimants in the two cases in an amount up to $300,000 *per insured*. We do not agree that the Association had such a duty.

■ Under section 1803 of the Insurance Company Law, the Association satisfies its obligation to settle and pay a "covered claim" by paying a certain amount *per claimant*. The physician is not a "claimant," and the professional corporation for which the physician practices is not a "claimant."[16] They are "insureds."[17] The Association has no duty under the Insurance Company Law to pay a claimant an amount up to $300,000 for each of the insureds. Thus, we conclude that, in the two cases set forth in the First Amended Petition, the Association performed its duty under the Insurance Company Law.

Because the Association performed its duty in the two cases that are the subject of Petitioners' First Amended Petition, the Association is immune from liability for its actions in those cases. Accordingly, the Association's preliminary objection in the nature of a demurrer is sustained, and Count V of the First Amended Petition is dismissed.

### ORDER

AND NOW, this 14th day of September, 1999, it is hereby ordered as follows:

---

We will sustain the objections only if the law clearly does not permit recovery on the facts alleged. *Id.*

14. 40 P.S. § 991.1818.

15. Sections 1803(b)(1)(i) and 1803(b)(4) of the Insurance Company Law, 40 P.S. §§ 991.1803(b)(1)(i) and 991.1803(b)(4).

16. Under the Insurance Company Law, a "claimant" is a "patient-victim" who has a claim against an insurer, *not* an insured who

has a claim against the insurer. *Pennsylvania Osteopathic Medical Association v. Foster,* 134 Pa.Cmwlth. 368, 579 A.2d 989, 995–96, *appeal dismissed,* 525 Pa. 500, 582 A.2d 319 (1990).

17. We note that, in their First Amended Petition, Petitioners usually refer to the physician and the professional corporation as separate and independent "insureds;" however, Petitioners refer to them as separate and independent "claimants" in paragraph 65 of the First Amended Petition.

1. The motion for summary relief filed by John H. Reed, M. Diane Koken, Thomas J. Judge, Sr., Joseph Cesare, Joan R. Richards, Howard F. Messer, Charles D. Hummer, Jr., David Zuern, Gary Veshecco, Robert Lohr and Shanin Specter, each in his/her capacity as a member of the CAT Fund Advisory Board, is granted, and Count I of Petitioners' First Amended Petition is dismissed as moot.

2. The preliminary objection in the nature of a demurrer filed by The Pennsylvania Property and Casualty Insurance Guaranty Association is sustained, and Count V of Petitioners' First Amended Petition is dismissed.