**R.M., Petitioner,**

v.

**PENNSYLVANIA HOUSING FINANCE AGENCY OF the COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 16, 1999.

Decided Nov. 4, 1999.

Ronald E. Metter, Philadelphia, for petitioner.

John F. Goryl, Harrisburg, for respondent.

Before DOYLE, President Judge, KELLEY, J., and NARICK, Senior Judge.

KELLEY, Judge.

R.M. appeals from a final order of the Pennsylvania Housing Finance Agency (Agency) which denied his application for mortgage assistance under the Homeowners' Emergency Mortgage Assistance Program. We affirm.

The facts of this case are as follows. R.M. purchased property located at 1333 Bobarn Drive, Narberth, Pennsylvania 19072 in 1985. The property is encum-

bered with two mortgages held by Mellon Mortgage Company. The first mortgage loan of $336,000 was originated in November 1992 and has a monthly payment of $3,079.46. The second mortgage loan is a line of credit in the amount of $37,000; this loan was originated in November 1993 and has a monthly payment of $414.

At the time he purchased the property, R.M. enjoyed a successful career as a civil litigator earning a gross income of approximately $200,000 to $300,000 per year. Supplemental Record (S.R.) 21. In 1993, however, R.M. became ill and was unable to work. R.M. began receiving social security disability which was substantially less than what he earned in the practice of law.

Eventually, R.M. was unable to pay his monthly payments on the first mortgage loan. By letter dated June 18, 1998, Mellon Mortgage Company notified R.M. that his first mortgage loan was in default. R.M.'s first mortgage loan had not been paid since June 1997 with arrearages, as of June 1998, totaling approximately $41,-642.77.

In July 1998, R.M. applied to the Agency for a Homeowner's Emergency Mortgage Assistance Program Loan (mortgage assistance loan) pursuant to the Housing Finance Agency Law (HFA Law).[1] At the time of his mortgage assistance loan application, R.M.'s net monthly household income was $2,612, which consisted of social security disability benefits for R.M. and his wife and children as well as income from R.M.'s wife.

By letter dated September 30, 1998, the Agency denied R.M.'s application on the following grounds:

1. No reasonable prospect of mortgagor resuming full mortgage payments within thirty-six (36) months and paying mortgage(s) by maturity based on: Mortgagor's income is insufficient to maintain mortgage. Future income is speculative.

2. No reasonable prospect of mortgagor resuming full mortgage payments within thirty-six (36) months and paying mortgage(s) by maturity based on: Mortgagor is financially overextended based upon income history. Past tax returns do not reflect the ability to have maintained total monthly expenses $6,505.93.

R.M. appealed. In his appeal, R.M. challenged the Agency's findings and argued that the Agency's denial was a violation of Section 31.206 of Title 12 of the Pennsylvania Code, 12 Pa.Code § 31.206 (Section 31.206), which R.M. asserts is a regulation. A hearing before an Agency hearing examiner ensued.

At the hearing on January 21, 1999, R.M. testified. R.M. also presented evidence which included *inter alia* (1) a letter from his personal physician dated January 16, 1999 indicating that R.M. was fully recovered from his disability and (2) a letter from a vocational expert which stated that R.M.'s earning potential was $280,-000 to $330,000 per year.

Based upon the testimony and evidence presented, the hearing examiner made the following findings of fact. R.M.'s first mortgage loan has been past due since June 1997 with arrearages totaling approximately $64,000. R.M. has monthly expenses of approximately $5,831. Since the date of his mortgage assistance loan application, R.M. and his wife have separated and the social security disability for her and the children now goes to her household, thereby reducing R.M.'s income from social security disability to $1,295 a month. Although R.M. earned approximately $20,-000 gross income from law-related activities in 1998, his business expenses consumed most of that income.

The hearing examiner concluded that whether or not R.M. will generate sufficient income in the future to maintain expenses of more that $5,800 per month is speculative. The hearing examiner fur-

1. Act of December 3, 1959, P.L. 1688, *as*      *amended,* 35 P.S. §§ 1680.102–1680.603a.

ther concluded that there is no reasonable prospect of the mortgagor resuming full mortgage payments within thirty-six (36) months and paying mortgage by maturity as R.M.'s income is insufficient to maintain his mortgage and future income is speculative. Accordingly, the hearing examiner affirmed the Agency's original decision of September 30, 1998 and denied R.M.'s mortgage assistance loan application.

■ R.M. now appeals to this Court.[2] R.M. has presented the following issues for our review:

1. Whether Section 31.206 is a regulation.

2. Whether the denial of R.M.'s application for a mortgage assistance loan violates Section 31.206.

First, R.M. contends that Section 31.206 is a regulation which has the force of law. We disagree.

The General Assembly has enumerated and detailed eligibility requirements for mortgage assistance in the HFA Law. Section 404–C of the HFA Law[3] sets forth the primary standards for determining eligibility and provides, in pertinent part, that no assistance may be made with respect to a mortgage unless:

(5) The agency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within thirty-six (36) months after the beginning of the period for which assistance payments are provided under this article and pay the mortgage or mortgages in full by its maturity date or by a later date agreed to by the mortgagee or mortgagees for completing mortgage payments.

Section 404–C(a)(5) of the HFA Law, 35 P.S. § 1680.404c(a)(5). The HFA Law further provides that "the agency shall adopt initial program guidelines for the implementation of this article and may revise the guidelines whenever appropriate." Section 401–C(b) of the HFA Law, 35 P.S. § 1680.401c(b).

Pursuant to this authority, the Agency adopted an initial program guideline entitled the "Policy Statement on Homeowner's Emergency Mortgage Assistance Program" (Policy Statement), 12 Pa.Code §§ 31.201–31.209. The Policy Statement was adopted on February 21, 1984 and has been periodically revised over the years. The section of the Policy Statement at issue herein is Section 31.206,[4] which provides, in pertinent part, that:

(b) The Agency will generally determine that a homeowner demonstrates a reasonable prospect of resuming mortgage payments and paying the mortgage by maturity, despite his current unemployment, if the homeowner is suffering a financial hardship through no fault of his own and can demonstrate the following:

(1) A favorable work and credit history.

(2) The ability and history of paying the mortgage when employed.

(3) The lack of an impediment or disability that prevents reemployment.

(4) That he is actively seeking work, as evidenced by a written statement to that effect.

12 Pa.Code § 31.206.

The question before us is whether Section 31.206 is a regulation with the force and effect of law, or a statement of policy. We begin our analysis with an examination of the Commonwealth Documents Law.[5]

2. This Court's scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Johnson v. Pennsylvania Housing Finance Agency*, 99 Pa.Cmwlth. 77, 512 A.2d 1319 (1986).

3. Added by the Act of December 23, 1983, P.L. 385.

4. This section was added in July 1994.

5. The Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1101–1602. Section 101 of the Commonwealth Documents Law, 45 P.S. § 1101, which constituted the short title

The Commonwealth Documents Law defines regulation and statement of policy as follows:

> "REGULATION" means any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.
>
> "STATEMENT OF POLICY" means any document, except an adjudication or a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document interpreting or implementing any act of Assembly enforced or administered by such agency.

Section 102 of the Commonwealth Law Documents, 45 P.S. § 1102. It is well settled that agency "regulations" must be promulgated pursuant to the notice and comment procedures contained in the Commonwealth Documents Law [6] in order to have the force and effect of law. *Hillcrest Home, Inc. v. Department of Public Welfare*, 123 Pa.Cmwlth. 289, 553 A.2d 1037 (1989). "Statements of policy," on the other hand, need not comply with these procedures. *Id.*

The Supreme Court in *Pennsylvania Human Relations Commission v. Norristown Area School District*, 473 Pa. 334, 374 A.2d 671, 679 (1977), has explained that the critical distinction between a substantive rule or regulation and a statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings. A properly adopted regulation establishes a standard of conduct which has the force of law, whereas a general statement of policy does not establish a "binding norm." *Id.* This Court elaborated on the Supreme Court's distinction by explaining that a " 'binding norm' means that the agency is bound by the statement until the agency repeals it, and if the statement is binding on the agency, it is a regulation." *Department of Environmental Resources v. Rushton Mining Co.*, 139 Pa.Cmwlth. 648, 591 A.2d 1168, 1173, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991).

In analyzing whether an agency pronouncement is a statement of policy or a regulation, the starting point is generally the agency's own characterization of the rule. *See Norristown Area School District.* Here, the Agency has consistently classified the Policy Statement as a "statement of policy." The rule is self-described as a "Policy Statement." The Agency has published the Policy Statement with the proviso that the Policy Statement serve "as a statement of policy rather than as a regulation." Pennsylvania Bulletin, vol. 24, no. 27, p. 3224 (July 2, 1994). The Agency has stated that the Policy Statement "establishes general principles to govern decisions rendered by the Agency, rather than providing mandatory requirements and rules of procedure." *Id.* "These general principles do not represent an inflexible set of rules which must be followed in all cases, but rather represents a general statement of policy which will

---

to the Commonwealth Documents Law, was repealed by the Act of July 9, 1976, P.L. 877. In the absence of a new title, we shall continue to refer to the act as the Commonwealth Documents Law.

**6.** The Commonwealth Documents Law sets forth requirements that must be satisfied in order for the regulation to be valid. The requirements are as follows:

(1) give public notice of its intention to promulgate, amend or repeal any administrative regulation, 45 P.S. § 1201;

(2) accept, review and consider any submitted written comments, 45 P.S. § 1202;

(3) obtain legal approval of the proposed regulation, 45 P.S. § 1205; and

(4) deposit the text of the regulation with the Legislative Reference Bureau for publication, 45 P.S. § 1207.

guide Agency officials in reaching specific decisions." *Id.* While the Agency's characterization of its own rule weighs in favor of a holding that Section 31.206 is not a regulation, it is by no means dispositive on the issue.

■ A touchstone of a regulation is that it establishes a binding norm. To ascertain whether Section 31.206 creates a binding norm, we must consider (1) the section's plain language, (2) the manner in which it has been implemented by the Agency, and (3) whether the section restricts the Agency's discretion.

### (1) Plain Language

■ Section 31.206 provides that the Agency *"will generally determine* that a homeowner demonstrates a reasonable prospect of resuming mortgage payments ..." if the homeowner satisfies four criteria. (Emphasis added). While the word "will" generally denotes a mandatory tone, the inclusion of the word "generally" infers that the Agency is not bound by the language.

The substantive content of the four factors themselves also favors a finding that Section 31.206 does not create a binding norm. The rule does not contain specifications of precise qualifications. The factors provide, for example, a "favorable work and credit history," but nowhere does the Policy Statement further define "favorable." As such, Section 31.206 leaves the determination of whether a homeowner has established a "favorable" work and credit history to the sound discretion of the Agency.

### (2) Implementation

R.M. contends that the Agency's implementation of the Policy Statement establishes a binding norm. In support thereof, R.M. relies upon statements made by the hearing examiner at the hearing.

The hearing examiner stated that the Policy Statement is "binding" explaining that "[a]ll the criteria need to be met" and that each of the criteria is considered when

the information is available. The hearing examiner further explained that the "guidelines" are used to administer the program.

The fact that the hearing examiner relies upon the criteria set forth in Section 31.206 to help determine whether a homeowner qualifies for mortgage assistance is not particularly probative on whether the Section 31.206 is substantive. We would expect agency employees to consider all sources of pertinent information in performing that task, whether the information be contained in a substantive rule or regulation, an interpretive rule, or a statement of policy. Otherwise, an agency's statement of policy would serve no purpose if agency employees could not refer to it for guidance.

### (3) Discretion

The final criterion in our analysis is whether Section 31.206 genuinely leaves the agency and its decisionmakers free to exercise discretion. Section 31.206(a) provides that the Agency "will consider *all* relevant factors when evaluating whether a homeowner has a reasonable prospect of being able to resume full mortgage payments...." (Emphasis added). Section 31.206(b) sets forth four factors to be considered by the Agency in making determinations as to whether applicants are suffering financial hardship due to circumstances beyond their control and whether they demonstrate a reasonable prospect of resuming full mortgage payments within 36 months and paying the mortgage in full by the maturity date under Section 404–C(a)(5) of the HPA Law. Satisfaction of these factors, however, does not necessarily compel the conclusion that a homeowner is qualified for mortgage assistance. Rather, the Agency is free to consider in toto those four factors, as well as others, and then, based on that guidance and their own judgment, decide whether an applicant is qualified for mortgage assistance. Such is the nature of a discretionary rule, not of a substantive one. Accordingly, we conclude

that Section 31.206 is a statement of policy, not a regulation, and thus does not have the force and effect of law.

R.M. next contends the denial of R.M.'s application for a mortgage assistance loan violates Section 31.206. Having determined that Section 31.206 is a statement of policy, not a regulation which binds the Agency, our review is limited to determining whether the Agency's denial of R.M.'s application constitutes a violation of the HPA Law.

◼ As stated above, the HPA Law provides that no assistance may be made unless the Agency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within thirty-six (36) months. Section 404–C(a)(5) of the HPA Law. In this regard the hearing examiner determined that there was not a reasonable prospect that R.M. would be able to resume full mortgage payments within 36 months. The hearing examiner found that R.M.'s income is insufficient to maintain his mortgage and future income is speculative. Although R.M. presented evidence that he has returned to the practice of law and has an estimated earning potential of $280,000 to $330,000 per year, there was no evidence as to when R.M. could expect to earn this income or explanation as to why R.M. has been essentially unsuccessful in these endeavors since his return to work. It was reasonable for the hearing examiner to conclude that R.M.'S future income was speculative. As the Agency cannot base its determination on speculative income, we conclude that the hearing examiner did not err as a matter of law in denying R.M.'s application for mortgage assistance. *See Cullins v. Pennsylvania Housing Finance Agency,* 154 Pa.Cmwlth. 400, 623 A.2d 951 (1993).

Accordingly, the order of the Agency is affirmed.

## ORDER

AND NOW, this 4th day of November, 1999, the order of the Pennsylvania Housing Finance Agency, dated February 4, 1999, is hereby affirmed.