IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert LaTorre,                        :
               Petitioner      :
                              :
      v.                           : No.  1143 C.D. 2021
                              : Submitted: February 10, 2023
Pennsylvania Housing                   :
Finance Agency,                        :
               Respondent      :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED:  June 14, 2023


      Albert LaTorre (LaTorre) petitions for review of the Pennsylvania Housing Finance Agency's (Agency) August 18, 2021 decision affirming the Agency's May 13, 2021 denial of his application for an emergency mortgage assistance loan (HEMAP Loan) under the portion of the Housing Finance Agency Law[1] commonly known as the Homeowner's Emergency Mortgage Assistance Loan Program (Law).[2] After review, we affirm.

---

[1] Act of December 3, 1959, P.L. 1688, *as amended*, 35 P.S. §§ 1680.101-1680.603a.

[2] Added by Section 2 of the Act of December 23, 1983, P.L. 385, Act 91.

## BACKGROUND

In December 2015, LaTorre and his wife (collectively, the LaTorres) purchased real property at 634 Elephant Road in Perkasie, Pennsylvania (Property) and obtained a mortgage financed by Citadel Federal Credit Union (Citadel) in the amount of $548,000. Supplemental Reproduced Record (S.R.R.) at 10b. On February 24, 2021, Citadel issued the LaTorres a Notice[3] under the Law advising they had failed to make several mortgage payments and their mortgage was in default. *Id*. at 47b. Specifically, the Notice provided that the LaTorres did not make their monthly mortgage payments from February 1, 2020, through February 1, 2021, resulting in a past due amount of $37,653.94.[4] *Id*. Thereafter, the LaTorres filed their HEMAP Loan application on March 25, 2021. *Id*. On May 13, 2021, the Agency issued a Notice of Adverse Action denying the LaTorres' HEMAP Loan application. *Id*. at 4b. The Agency indicated its reason for denial was:

> No reasonable prospect of applicant[s] resuming full mortgage payment within thirty-six months from the date of the mortgage delinquency and paying mortgage by maturity based on: Applicant[s'] income is insufficient to maintain mortgage. $60,000 maximum assistance will be exceeded in the next few months and the applicants are unable to resume within that time frame.

*Id*. at 43b.

---

[3] A lender provides a notice to a mortgagor to instruct the mortgagor of different means available to resolve arrearages and avoid property foreclosure and to provide a timetable in which such means must be accomplished. Section 403-C of the Law, 35 P.S. § 1680.403c. Notably, the notice informs the mortgagor of the availability of financial assistance through HEMAP. 35 P.S. § 1680.403c(b)(1).

[4] When LaTorre filed his appeal with this Court in September 2021, the arrearages on the LaTorres' mortgage had increased to approximately $79,000. S.R.R. at 10b-15b, 26b.

The LaTorres appealed and the Agency held a hearing on June 23, 2021, before an Agency hearing examiner (Examiner). After the hearing, the Examiner made the following factual findings. LaTorre was self-employed in a dental practice for approximately 26 years before selling his practice in 2016. S.R.R. at 23b. LaTorre continued practicing dentistry until March 2020, when he was laid off due to the COVID-19 pandemic. *Id*. LaTorre's wife, who had worked as a dental hygienist since 2018, was also laid off during the pandemic. *Id*. at 24b. After losing their employment, the LaTorres both received unemployment compensation benefits. *Id*. Subsequently, LaTorre was unable to return to work due to health problems and began receiving $2,784 per month in social security disability benefits. *Id*. LaTorre's wife secured new employment, earning approximately $2,457 per month, resulting in a combined monthly income of $5,421.[5] At the time of their appeal, the LaTorres reported total monthly living expenses of $6,205, including housing expenses of $4,286, installment debt of $358, and living expenses of $1,561. S.R.R. at 10b-15b, 26b.

The Examiner also made the following relevant findings of fact and legal conclusions:

> At [the time LaTorre's federal stimulus payments are exhausted], the average net monthly income will decrease to approximately $5,421 ($2,784 social security disability and $2,457 earnings). This level of monthly income will be insufficient to maintain the total monthly expenses of $6,205 reported at appeal.
>
> Additionally, [LaTorre] stated that [the LaTorres] are unable to resume and maintain monthly payments at the current amount of $3,913 and

---

[5] At the time of the appeal, LaTorre received unemployment compensation benefits including federal stimulus payments of $3,763 per month, but those benefits were expected to be exhausted in mid-September 2021; thus the Agency did not include those payments in its income calculation. S.R.R. at 26b.

are meeting with the lender in hopes of securing a modification. This situation evidences insufficient income.

Also, the Agency believes that in order for a homeowner to successfully maintain the mortgage payments, no more than 35% of the average net monthly income should be devoted to maintaining the monthly housing expense (mortgage payment, real estate taxes, hazard insurance and utilities), leaving the remaining 65% of the income to maintain any monthly living expenses and installment debt. The total monthly housing expense of $4,286 reported at appeal encumbers 48% of the current household income of $9,004 which includes the extended unemployment compensation benefits and federal stimulus unemployment compensation benefits. However, the federal stimulus will end in early September 2021 and it appears that the regular unemployment benefits will be exhausted by mid-September 2021. At that time, the monthly housing expense of $4,286 will encumber 82% of the net monthly income of $5,241 leaving only $955 remaining to cover the monthly living expenses and installment debt totaling $1,919. This situation further evidences insufficient income.

Furthermore, according to information submitted to the record, the mortgage payments on the Fay Servicing [sic] mortgage remain due for February 1, 2021 in the amount of $71,192.43, including the July 1, 2021 payment. The August 1, 2021 and September 1, 2021 payments of $3,913 would increase **the total amount needed to reinstate the mortgage to approximately $79,018.43 through September 2021**. Although [LaTorre] stated that [the LaTorres] could provide sufficient funds to cover the delinquent payments that exceed the $60,000 maximum available under the [HEMAP], the unemployment compensation benefits will be exhausted as of September 2021. At that time, the monthly income will be insufficient to maintain the total monthly expenses. Therefore, in view of the record at this time, a mortgage assistance loan was properly denied on the basis: No reasonable prospect of applicant resuming full mortgage payments within thirty-six (36) months from the date of the mortgage delinquency and paying mortgage(s) by maturity based on: Applicant[s'] income is insufficient to maintain mortgage. (Act 91, Section 404-C(A)).

S.R.R. at 26b-27b (emphasis added). Thus, the Examiner affirmed the Agency's May 13, 2021 determination denying the LaTorres' HEMAP Loan application.

On appeal to this Court, LaTorre asserts the Agency should have granted the HEMAP Loan as he has "sufficient funds to pay back mortgage payments in order to qualify for the HEMAP loan." LaTorre's Br. at 6; Petition at 2. In response, the Agency asserts this Court should affirm its decision to deny LaTorre the HEMAP Loan for two reasons. First, it asserts this Court should affirm its decision on the basis that payment of the present delinquency would exceed the $60,000 statutory maximum of HEMAP assistance. Agency's Br. at 2. Second, the Agency asserts this Court should affirm its decision based on LaTorre's inability to demonstrate that he has a reasonable prospect of resuming full mortgage payments within 36 months and paying the mortgage by maturity. Agency's Br. at 2.

## DISCUSSION

In reviewing the Agency's decision to deny a HEMAP loan, we consider whether substantial evidence supports the Agency's findings of fact that are necessary to support its adjudication and whether the Agency violated a party's constitutional rights, or committed an error of law. 2 Pa. C.S. § 704. The Law's purpose is "to establish a program which will through emergency mortgage payments prevent widespread mortgage foreclosures . . . which result from default caused by circumstances beyond a homeowner's control." *Crawl v. Pa. Hous. Fin. Agency,* 511 A.2d 924, 927 (Pa. Cmwlth. 1986). The Agency's "interpretation of [the Law] is entitled to great weight and should be disregarded or overturned only if such construction is clearly erroneous." *Horton v. Pa. Hous. Fin. Agency*, 511 A.2d 917, 918 (Pa. Cmwlth. 1986) (citation omitted).

An applicant seeking to obtain a HEMAP loan under the Law bears the burden of establishing that the applicant meets the Law's requirements. Section 404-C(a) of the Law, 35 P.S. § 1680.404c(a). First, relevant to this appeal, under Section 404-

5

c(f) of the Law, the amount of assistance to any mortgagor under the HEMAP cannot "exceed the sum of $60,000." 35 P.S. § 1680.404c(f). Additionally, under Section 404-C(a)(5) of the Law, assistance will only be made to an applicant if

> [t]he agency has determined that there is a **reasonable prospect** that the mortgagor will be able to **resume full mortgage payments** within twenty-four (24) months after the beginning of the period for which assistance payments are provided under the article and pay the mortgage or mortgages in full by its maturity date or by a later date agreed to by the mortgagees for completing mortgage payments.

35 P.S. § 1680.404c(a)(5) (emphasis added). Relevant to this appeal, Section 405-C(f.1) of the Law extends the 24-month period to a 36-month period when the unemployment rate exceeds 6.5%.[6]

While the Law does not define "reasonable prospect," the Agency "shall develop uniform notices and rules and regulations in order to implement the provisions of this article." Section 401-C(c) of the Law, 35 P.S. § 1680.401c(c). In the Agency's Policy Statement on Homeowner's Emergency Assistance Program (Policy Statement) interpreting "reasonable prospect," Section 31.206(a) states that the Agency will consider:

> (1) The homeowner's prior work history, experience, training, opportunities for retraining and similar factors which may affect the homeowner's future employment opportunities.

---

[6] This provision states:

> The twenty-four (24) month limit on assistance available under this act established in subsection (f) and referenced in sections 401-C(a)(5), 403-C(f) and 404-C(a)(5) and (12) shall increase to thirty-six (36) months if during the month the homeowner submits an application for assistance the average rate of total unemployment in the Commonwealth, as seasonally adjusted, for the period consisting of the most recent three (3) months for which such data for the Commonwealth is published before the close of such month equals or exceeds six and one-half (6.5) percent.

Section 405-C(f.1) of the Law, 35 P.S. § 1680.405c(f.1), added by Section 4 of the Act of December 21, 1998, P.L. 1258.

6

(2) Potential for future changes in the homeowner's financial prospects through re-employment, schooling, training or debt reduction, or other income changes sufficient to enable the homeowner to resume full mortgage payments.

(3) Noncash benefits that may reduce household expenses, such as food stamps, free medical services for military or low-income families, a company-provided automobile, or receipt of food or clothing from family members living outside the household.

(4) Changes in income or recurring expenses, or both, that may be affected by changes in the age, composition or employment of members of the household.

(5) Potential for repayment of short-term or installment debt.

(6) Delinquencies in other debts which seriously jeopardize continued ownership of the home, which cannot be cured by a mortgage assistance loan.

(7) A homeowner's demonstrated ability to make regular monthly mortgage payments, even though those payments represented most of the homeowner's income. In determining whether the homeowner's future job and income prospects will be sufficient to enable the homeowner to pay the mortgage debt--including principal, interest, taxes and insurance--the Agency will take into consideration the amount of household income available to the homeowner for a reasonable period of time not to exceed 24 months prior to the circumstances which caused the mortgage delinquency and whether the income was sufficient as evidenced by documentation, including tax returns, Internal Revenue Service Form W-2 and tax transcripts. If a homeowner is not required to file taxes, certification of this fact is mandatory at the time of application. In cases when nontaxable income is earned or financial government benefits are received, documentation evidencing receipt of the income or benefits shall be provided.

12 Pa. Code § 31.206(a).[7]  Additionally, the Policy Statement provides:

---

[7] Section 31.206 of the Policy Statement "is a statement of policy, not a regulation, and thus does not have the force and effect of law." *R.M. v. Pa. Hous. Fin. Agency*, 740 A.2d 302, 308 **(Footnote continued on next page…)**

7

The homeowner shall provide sufficient information to allow the Agency to assess the homeowner's future ability to pay the mortgage debt. The Agency will base its decision on the information received from the homeowner or other sources. The lack of sufficient information from the homeowner which is reasonably available to the homeowner, or the receipt of knowingly false or misleading information from the homeowner may result in a denial of the application on the merits.

12 Pa. Code § 31.206.

In making its determination regarding whether an applicant has a reasonable prospect of resuming full mortgage payments, this Court has previously held that "the Agency cannot base its determination on speculative income[.]" *R.M. v. Pa. Hous. Fin. Agency*, 740 A.2d 302, 308 (Pa. Cmwlth. 1999). In *R.M.*, this Court concluded that the hearing examiner reasonably decided homeowner's future income was speculative where there was no evidence as to when he expected to earn it, nor an explanation of why he had previously been unable to do so. *Id.* Our Court has also held that it is within a hearing examiner's discretion to determine that a petitioner does not meet the eligibility requirements for a HEMAP loan when the petitioner's past income was insufficient to maintain monthly expenses. *Mull v. Pa. Hous. Fin. Agency*, 529 A.2d 1185, 1188 (Pa. Cmwlth. 1987). Accordingly, the Agency does not abuse its discretion or commit an error of law when it denies an application where the applicant's evidence of income is speculative or insufficient to demonstrate a reasonable probability that the mortgage payments will resume and the mortgage will be paid off on time. *R.M.*, 740 A.2d at 308.

---

(Pa. Cmwlth. 1999).

Here, as Examiner noted, the arrearages on the mortgage were $79,018.43 through September 2021. S.R.R. at 27b. In addition, the LaTorres' monthly expenses at the time of the appeal hearing: mortgages and utilities ($4,286), installment debt ($358) and living expenses ($1,561), exceeded their monthly income of $5,421. There is substantial evidence in the record to support these findings. Notably, LaTorre does not dispute the accuracy of these amounts. Rather, LaTorre argues he has "sufficient funds to pay back mortgage payments in order to qualify for the HEMAP loan." Petition at 2. However, at the Agency's hearing, Examiner asked whether LaTorre had any money saved that could be applied toward the mortgage delinquency and LaTorre stated, "Yeah, we have some savings. Not $66,000 but we have some savings." S.R.R. at 10b. When Examiner asked if LaTorre knew how much he had that could be applied toward the mortgage delinquency, LaTorre answered, "No, not off the top of my head." *Id*. At the conclusion of the hearing, Examiner requested LaTorre to provide recent checking and savings account information. Nothing in the record suggests that LaTorre provided this information to the Agency nor does LaTorre claim that he did so. LaTorre does not indicate where the funds would have come from or why he was unable to utilize the funds to pay the mortgage previously. Thus, these funds are speculative and LaTorre's assertion that some amount of funds exist is insufficient to show that LaTorre satisfies the Law's criteria, as payment of the arrearages would exceed the HEMAP's statutory maximum of $60,000.

Moreover, despite these funds being speculative, Examiner considered LaTorre's statement that he could provide sufficient funds to cover the delinquent payments that exceed the maximum available under the HEMAP and Examiner concluded that once LaTorre's unemployment compensation benefits were

9

exhausted in September 2021, the LaTorres' "monthly income [would] be insufficient to maintain the total monthly expenses." S.R.R. at 27b. Thus, even giving LaTorre the benefit of assuming he had the funds to cover the delinquent payments, Examiner concluded the LaTorres' income would be insufficient to resume paying full mortgage payments. This is further supported by the record, as LaTorre testified that if his mortgage payments were not modified, he did not believe he would be able to resume making the full monthly mortgage payment. *See* S.R.R. at 10b-11b.

LaTorre asserts in his brief that "Social Security has a 'Ticket to Work' program that encourages taxpayers to return to work despite their disability" and alleges that by not considering this program the Agency "essentially condemned [LaTorre and his wife] to a lifetime of homelessness as [they] likely would not be able to qualify for a mortgage or even a lease." LaTorre asserts that his receipt of social security disability was "not necessarily a permanent arrangement" and that he returned to work in November 2021 in a modified capacity to work as a pediatric dentist. However, at the Agency's hearing, when Examiner questioned his receipt of unemployment benefits and disability benefits, LaTorre stated, "Well from what I've read you are able to receive unemployment if you are unable to work in a particular field meaning, you know I'm a dentist, so I can't do dentistry because of my disability but I can still teach." S.R.R. at 7b. Besides his assertion in his brief to this Court that he has obtained employment, there was no evidence presented to the Agency that he was seeking future employment in dentistry nor any reference to the "Ticket to Work" program. It was LaTorre's burden to establish that he met the Law's criteria, and his post-hearing assertions do not alter the fact that he failed to do so. *See* 35 P.S. § 1680.404c(a)(5). While we recognize the unfortunate

10

challenges the LaTorres have faced, the statute does not provide any exceptions to the mandatory statutory requirements for an applicant to receive a HEMAP loan.

## CONCLUSION

The Agency's findings that the LaTorres' monthly expenses exceed their monthly income and that their mortgage arrearages exceed the Law's $60,000 statutory maximum are supported by substantial evidence in the record. Because the Agency cannot consider speculative income in determining whether an applicant has a reasonable prospect of resuming full mortgage payments, the Agency properly determined that the LaTorres lacked a reasonable prospect of being able to resume full mortgage payments within 36 months and that the assistance they required exceeded HEMAP's statutory maximum. Therefore, the Agency did not abuse its discretion or err as a matter of law in denying the LaTorres a HEMAP Loan. Accordingly, we affirm the Agency's decision.

_____

STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert LaTorre,                          :
                    Petitioner           :
                                         :
        v.                               :  No.  1143 C.D. 2021
                                         :
Pennsylvania Housing                     :
Finance Agency,                          :
                    Respondent           :


# **O R D E R**


   **AND NOW**, this 14th day of June 2023, the August 18, 2021 decision of the

Pennsylvania Housing Finance Agency is **AFFIRMED**.


                                   _____
                                   STACY WALLACE, Judge