539 A.2d 920

Booker T. Joe, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Housing Finance Agency, Respondent.

Submitted on briefs December 16, 1987, to President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Irv Ackelsberg,* for petitioner.

*Trent Hargrove,* with him, *Jolynn M. Stoy,* for respondent.

OPINION BY JUDGE COLINS, March 30, 1988:

Booker T. Joe, homeowner and mortgagor (petitioner), appeals an order of the Pennsylvania Housing Finance Agency (Agency) which denied his application for emergency mortgage assistance. We must determine the novel question of whether certain financial consequences of a mortgagor's alcoholism amount to "financial hardship due to circumstances beyond the mortgagor's control" so as to bring him within the purview of Section 404-C of the Homeowner's Emergency Assistance Act (Act 91 or Act).[1]

During 1982, petitioner defaulted on his mortgage payments because, in his words, he "drank up the mortgage money." Throughout his mortgage delinquency and until his application for mortgage assistance, petitioner was gainfully employed by the City of Philadelphia.[2] On April 25, 1985, the Agency denied petitioner's applica-

---

[1] Act of December 3, 1959, P.L. 1688, *as amended,* added by Section 2 of the Act of December 23, 1983, P.L. 385, *as amended,* 35 P.S. §1680.404c.

[2] Petitioner testified that his gross income in 1982 and in 1983 was $16,791.00 and $17,656.00, respectively.

tion for assistance based upon its determination that petitioner had sufficient income to pay his mortgage such that he was not suffering financial hardship due to circumstances beyond his control. Upon administrative appeal and following a hearing, a Hearing Examiner affirmed the Agency's determination. Noting petitioner's alcoholism[3] and the expert testimony proffered by petitioner in an attempt to elucidate same, the Hearing Examiner found that petitioner had not suffered unemployment or loss of income as a result of economic factors or health problems and that he, in fact, had continued to hold down his job despite his active alcoholism. The Hearing Examiner specifically limited the application of Act 91 to those mortgagors suffering a "curtailment of income" arising from unemployment or underemployment, special marital circumstances or unique medical circumstances, any of which must be beyond the mortgagor's control. Finally, the Hearing Examiner noted petitioner's maintenance of his income and concluded that the Commonwealth is not "responsible for an individual's mismanagement or misuse of his own available funds."

Upon appeal to this Court, petitioner contends that the Agency applied an overly-restrictive eligibility standard in evaluating his application for assistance and erred in concluding that his financial distress resulted from circumstances within his control. In response to an Order of this Court, dated September 29, 1987,[4] pe-

---

[3] As of the date of the hearing on October 15, 1985, petitioner had completed an in-patient program for the treatment of alcoholism and was continuing to abstain from the use of alcohol. In his decision, the Hearing Examiner noted that petitioner had been rehabilitated since October, 1984.

[4] This Court directed both parties to file supplemental briefs addressing the following issue: whether alcoholism qualifies as a condition beyond one's control for the purpose of qualifying for

titioner has elaborated upon his second contention and now suggests that certain decisions of this and other courts support the view that alcoholism is an illness necessarily beyond the individual's control.

Preliminarily, we note that our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether the Agency's findings of fact are not supported by substantial evidence. *Mull v. Pennsylvania Housing Finance Agency,* 108 Pa. Commonwealth Ct. 459, 529 A.2d 1185 (1987). Moreover, the Agency's interpretation of the Act is entitled to great weight and may be disregarded only if such construction is clearly erroneous. *Id.*

Petitioner's first argument is premised upon the Hearing Examiner's requirement that a mortgagor suffer a "curtailment of income" before mortgage assistance may be granted, a test not derived from the Act or Agency's regulation and contrary to the intention of the legislature, or so petitioner submits. According to petitioner, such a requirement impermissibly removes from the Act's scope any number of possible financial emergencies impacting upon a mortgagor's *expenses* rather than his *income,* despite the fact that an increase in expenses may well arise through circumstances beyond the mortgagor's control.

To qualify for assistance, a mortgagor must meet all of the eligibility criteria defined in Section 404-C of Act 91. At issue in the instant matter is one of these criteria, providing that:

(4)   The mortgagor is a permanent resident of this Commonwealth and *is suffering financial*

---

emergency mortgage assistance, with consideration of decisions of this Court in appeals from other Agency determinations involving similar medical problems (citing *Morrell v. Unemployment Compensation Board of Review,* 108 Pa. Commonwealth Ct. 499, 485 A.2d 1214 (1984)).

*hardship due to circumstances beyond the mortgagor's control* which render the mortgagor unable to correct the delinquency or delinquencies within a reasonable time and make full mortgage payments. (Emphasis added.)

The pertinent phrase, "circumstances beyond the mortgagor's control," is imprecise and not further defined in Act 91, thus requiring us to construe those terms so as to "ascertain and effectuate the intention of the General Assembly." 1 Pa. C. S. §1921(a). In so doing, we may pertinently consider, among other factors, the "occasion and necessity" of the statute, the "mischief to be remedied" and the "object to be attained." 1 Pa. C. S. §1921(c)(1), (3), (4).

With these points in mind, we note that the General Assembly clearly defined the "occasion and necessity" of Act 91 in its preamble, which reads in pertinent part as follows:

(a). Findings.—The General Assembly finds that:

(1) The Commonwealth is in a severe recession and that the short downturn in economic activity has driven large numbers of workers into unemployment and has reduced the incomes of many others;

(2) as a result of these adverse economic conditions, the capacity of many homeowners to continue to make mortgage payments has deteriorated and may further deteriorate in the months ahead, leading to the possibility of widespread mortgage foreclosures and distress sales of homes;

(3) many of these homeowners could retain their homes if they received temporary financial assistance until economic conditions improve.

. . .

Such findings lend credence to the Hearing Examiner's articulation of a "curtailment of income" standard by which eligibility for assistance is evaluated. *See* 35 P.S. §1680.404c(a)(10) (in determining whether the mortgagor's financial hardship is due to circumstances beyond his control, the Agency may consider his employment record, credit history and current income); *Felegie v. Pennsylvania Housing Finance Agency,* 104 Pa. Commonwealth Ct. 128, 523 A.2d 417 (1987).

Petitioner argues that a requirement of a "curtailment of income" penalizes mortgagors who maintain their employment despite hardship circumstances. By so doing, petitioner misses the point. Act 91 intends to alleviate financial hardship occasioned by circumstances *beyond* the mortgagor's control. Whatever financial hardship petitioner here suffered was self-imposed. While his alcoholism may well have been beyond his control, his decision to devote his earnings to the purchase of alcohol rather than make his mortgage payments must be viewed as a voluntary one for the purposes of Act 91.

By this decision, the Court does not mean to declare that alcoholism is not an illness from the medical standpoint. On the contrary, we are well aware of the grave emotional and financial burden which is placed upon our society by untreated alcoholism. By our decision, we are merely declaring that the financial hardships created as a result of untreated alcoholism are not included among those envisioned by the legislature in its passage of Act 91.

Because petitioner's financial hardship was not caused by circumstances beyond his control, the Agency properly denied his application for emergency mortgage assistance. Accordingly, the Order of the Agency is affirmed.

ORDER

AND NOW, this 30th day of March, 1988, the Order of the Pennsylvania Housing Finance Agency in the above-captioned matter is affirmed.

---

CONCURRING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I concur in the result reached by the majority. However, I hasten to express my misgivings about the implication contained therein that alcoholism cannot be a "circumstance beyond the mortgagor's control," causing financial hardship so as to qualify that mortgagor for emergency assistance under Act 91.

The majority rightly recognizes the significant body of medical opinion which views alcoholism as a disease. Whether this disease is the *cause* or the *result* of the compulsive ingestion of alcohol is a question best left to the expertise of the medical and psychiatric professions. Nonetheless, the opinion expressed by the majority falls short of making the essential distinction between an alcoholic's conduct and his condition.

It may be true, as the majority states, that a decision to devote one's earnings to the purchase of alcohol is a voluntary one. This Court has as much as recognized the voluntary nature of alcoholic conduct in denying unemployment compensation benefits for absenteeism due to alcoholism. *Mooney v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 404, 395 A.2d 675 (1978), *aff'd*, 487 Pa. 448, 409 A.2d 854 (1980). However, the *condition* of alcoholism may well be a circumstance beyond one's control, which I believe may be illustrated by example. If an alcoholic who is financially strapped but able to maintain employment (and hence a steady income) seeks treatment which costs him money, he may indeed suffer financial hard-

ship. This hardship is attributable not to alcoholic conduct, which by treatment he has controlled, but to his "disease" or condition, a circumstance which few would argue he can "undo." Would this Court then have that alcoholic choose between treatments and mortgage payments because he does not qualify for benefits under Act 91?

For this reason, I cannot place credence, as does the majority, · in the agency hearing examiner's articulation of a "curtailment of income" standard by which Act 91 eligibility was evaluated. The Act's criterion that the mortgagor must be "suffering financial hardship due to circumstances beyond his control" contemplates more than that, such as in instances when a mortgagor's family members suffer catastrophic or chronic illness causing financial hardship, notwithstanding the mortgagor's maintenance of income. To the extent that the majority opinion may be viewed as not recognizing that alcoholism *can,* in certain instances, constitute a circumstance beyond· one's control, I must respectfully differ.

Judge BARRY joins in this concurring opinion.