623 A.2d 951

**Bart CULLINS and Valerie Cullins, Petitioners,**

v.

**PENNSYLVANIA HOUSING FINANCE AGENCY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 1993.

Decided March 25, 1993.

Judith L. Jones, for petitioners.
John F. Goryl, for respondent.

Before PALLADINO and SMITH, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

Bart Cullins and Valerie Cullins (Appellants) appeal from a decision of a hearing examiner which affirmed the Pennsylvania Housing Finance Agency's (Agency) denial of Appellants' application for mortgage assistance under the Homeowner's Emergency Assistance Act (Act).[1] We affirm.

In 1986, Appellants purchased property in Nazareth, Pennsylvania with a mortgage from Valley Federal Savings and Loan Association (Valley), which provided for a monthly payment of $810.00. At the time of the purchase, both Appellants were employed. Two years later, Mrs. Cullins terminated her employment so that she could care for their infant son. At approximately the same time, Mr. Cullins quit his full time job to begin his own air conditioning sales and service business. This business was not successful, however, and within one year, Mr. Cullins began to look for other employment. Thereafter, Mr. Cullins worked sporadically and, at times, collected unemployment compensation benefits. During this period, Mrs. Cullins remained unemployed.

In April of 1990, Appellants obtained a second mortgage from American Financial of Tampa for debt consolidation purposes. Appellants continued to make payments on the Valley mortgage until the fall of 1991 by selling personal items and borrowing from family members.

Appellants had a total monthly housing expense of $1,331, which represented 72% of their highest average net monthly income in the past three years and 87% of average net monthly income in 1991. Monthly debt service, including the Valley mortgage, totalled $1,345.65, or 73% of Appellants' highest average net monthly income in the past three years and 88% of their average net monthly income in 1991.

On December 11, 1991, Valley notified Appellants that their mortgage was in serious default. Appellants then applied for

1. Act of December 23, 1983, P.L. 385, *as amended,* 35 P.S. §§ 1680.-401c–1680.410c.

emergency mortgage assistance, which the Agency denied. Appellants appealed, and a hearing was held before an examiner. At the time of the hearing, Mr. Cullins was unemployed and was ineligible for unemployment compensation benefits; the couple's only income was derived from Mrs. Cullins' babysitting services which brought in about $400 per month. At the hearing, Mr. Cullins testified that he anticipated beginning work at two positions. The first was a position at a department store for a maximum of 40 hours per week at $6.50 per hour; the second was a position obtained through a temporary agency. Mr. Cullins indicated that Mrs. Cullins also intended to return to work, possibly to her former position.

Upon a review of the evidence presented, the hearing examiner issued a decision which affirmed the Agency's original determination. Specifically, the hearing examiner concluded that Appellants were ineligible for mortgage assistance because: 1) the financial hardship that they were suffering was not "due to circumstances beyond [their] control" as required by Section 404–C(a)(4) of the Act;[2] and 2) there was not a reasonable prospect that Appellants would be able to resume full mortgage payments within thirty-six months and pay the mortgage in full by its maturity date as required by Section 404–C(a)(5) of the Act.[3] The hearing examiner based her first conclusion on a finding that Appellants' financial hardship was attributed to employment choices and financial overextension, circumstances within Appellants' control. The

2. Section 404–C(a)(4) provides, in pertinent part, that no assistance may be made with respect to a mortgage unless the mortgagor establishes that he "is suffering financial hardship due to circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency or delinquencies within a reasonable time and make full mortgage payments." 35 P.S. § 1680.404c(a)(4).

3. Section 404–C(a)(5) provides, in pertinent part, that no assistance may be made with respect to a mortgage unless:
[t]he agency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within thirty-six (36) months after the beginning of the period for which assistance payments are provided under this article and pay the mortgage or mortgages in full by its maturity date....
35 P.S. § 1680.404c(a)(5).

hearing examiner based her second conclusion on a finding that while Appellants had several potential sources of future income, the availability of those positions at the wages anticipated was uncertain. The hearing examiner also found that Appellants' actual income had been and continued to be inadequate to support their total housing expense and that Appellants were considerably overextended.

On appeal to this court,[4] three issues are presented: 1) whether the hearing examiner's finding that Appellants' financial hardship was attributed to Mrs. Cullins' decision to quit work is supported by substantial evidence; 2) whether the hearing examiner, in relying upon this finding, erred as a matter of law in concluding that Appellants' mortgage deficiency was not attributed to circumstances beyond their control; and 3) whether the hearing examiner erred as a matter of law in concluding that there was no reasonable prospect that Appellants would be able to resume full mortgage payments within thirty-six months and pay the mortgage in full by maturity.

With regard to the first issue, Appellants assert that the hearing examiner's finding that Appellants' mortgage deficiency was caused by Mrs. Cullins' decision to quit work to care for their son is not supported by substantial evidence.[5] Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Froman v. Pennsylvania Housing Finance Agency,* 105 Pa.Commonwealth Ct. 73, 522 A.2d 1164 (1987). In the instant case, the record contains ample evidence that Mrs. Cullins quit her job in 1988 and that Appel-

4. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or the Agency's findings of fact are unsupported by substantial evidence. *Joe v. Pennsylvania Housing Finance Agency,* 115 Pa.Commonwealth Ct. 49, 539 A.2d 920 (1988). The Agency's interpretation of the Act is entitled to great weight and may be disregarded only if such construction is clearly erroneous. *Id.*

5. Appellants contend that their mortgage deficiency was the result of "the sorry plight of the economy in which [Mr.] Cullins tried to better himself with his own business and tried to obtain employment in his field of work." Appellants' Brief, at 16.

lants' financial difficulties began around that time. In fact, Appellants themselves attributed their "financial bind" to Mrs. Cullins' decision to remain home with their infant son at a time when Mr. Cullins was embarking on a new business venture, thus leaving them with no source of stable income. In a handwritten statement, dated January 2, 1992, Mrs. Cullins indicated:

> We feel we got into this financial bind when I left my job in August of 1988 to be at home with our son. Bart felt secure in starting his own business we would be able to make it financially. Unfortunately, the business did not work out, and when we found ourselves going deeper in debt, Bart had to give up the business.

Original Record, Item 24. Therefore, we conclude that substantial evidence exists to support the hearing examiner's finding.

Next, Appellants assert that Mrs. Cullins' decision to quit work to care for their son was a circumstance beyond their control. This court repeatedly has held, however, that a mortgagor's voluntary resignation from employment is not a hardship beyond his control. *Willard v. Pennsylvania Housing Finance Agency*, 111 Pa.Commonwealth Ct. 154, 533 A.2d 794 (1987), *petition for allowance of appeal denied*, 518 Pa. 657, 544 A.2d 1344 (1988); *Felegie v. Pennsylvania Housing Finance Agency*, 104 Pa.Commonwealth Ct. 128, 523 A.2d 417 (1987). Although we may sympathize with working parents regarding the difficulties they face in finding proper child care, Appellants' decision simply is not the type of "circumstance" contemplated by the Act. This case is more akin to those cases in which we found circumstances to be within the mortgagor's control. *See Crawl v. Pennsylvania Housing Finance Agency*, 98 Pa.Commonwealth Ct. 431, 511 A.2d 924 (1986) (while mortgagor's decision to further her education was "laudable," her decision to forego employment was still a circumstance within her control).

Moreover, in concluding that Appellants' mortgage deficiency was not due to circumstances beyond their control, the hearing examiner did not rely on Appellants' employment

choices alone. The hearing examiner also considered debt analysis which indicated that Appellants were grossly overextended. The Agency's regulations provide that if a mortgagor's total debt service exceeds 53% of net income, there is a rebuttable presumption that the current financial hardship is not due to circumstances beyond his control. 16 Pa.Code § 40.204(b)(3)(i). As previously noted, Appellants' monthly debt service represented 73% of their highest average net monthly income in the past three years and 88% of their average net monthly income in 1991. We, therefore, conclude that the hearing examiner did not err as a matter of law in her determination that Appellants' mortgage deficiency was not caused by circumstances beyond their control.

■ With respect to the last issue, the Agency's regulations provide that if a mortgagor's total debt service exceeds 53% of net income, there is a rebuttable presumption that the homeowner will be unable to resume full mortgage payments within thirty-six months and pay the mortgage by maturity. 16 Pa.Code § 40.204(b)(3)(i). Appellants contend, however, that the record overcomes this presumption. While Appellants acknowledge that financial overextension indicates "an inability on the part of the homeowner to pull out of [his] financial depression," they assert that they fell into this depression because of the poor state of the economy and Mr. Cullins' inability to obtain adequate employment, the very circumstances that emergency mortgage assistance was meant to soften. Appellants' Brief, at 13. However, evidence of the reasons for Appellants' overextension is not sufficient to rebut the presumption created by the Agency's regulations. Regardless of the cause of Appellants' overextension, the fact remains that their total debt service was most recently 88% of their net income.

Appellants further assert that their inability to guarantee full and adequate employment does not support the hearing examiner's conclusion that there was no reasonable prospect of their being able to resume mortgage payments in thirty-six months and pay the mortgage in full by its maturity. We agree with the Agency's position, however, that the Agency

cannot base its determination on speculative income. The record discloses that Mr. Cullins did not provide any evidence of guaranteed hours by the department store or by the temporary agency. Moreover, Mrs. Cullins' return to her former position was only a possibility. Neither the Act nor the Agency's regulations lend support to Appellants' position that speculative income may be considered. The Agency is bound to evaluate Appellants' eligibility on the basis of their actual income history. The hearing examiner, therefore, properly considered Appellants' only source of guaranteed income, the $400 earned by Mrs. Cullins' babysitting services, in addition to Appellants' financial overextension. Given that Appellants' income had been, and continued to be, inadequate to support their total housing expense, we conclude that Appellants' financial situation was simply the result of long term financial difficulties and not the emergency situation contemplated by the Act.[6] Therefore, the hearing examiner did not err as a matter of law in her determination that Appellants' prospects appeared poor for resumption of mortgage payments in thirty-six months and payment of the mortgage in full by its maturity date.

Having determined that the hearing examiner's findings were supported by substantial evidence and that the hearing examiner did not err in concluding that Appellants failed to meet all of the eligibility criteria under the Act, the order of the Agency is affirmed.

### ORDER

AND NOW, March 25, 1993, the order of the Pennsylvania Housing Finance Agency in the above-captioned matter is affirmed.

---

**6.** The preamble to the Act states the Act's purpose as follows:

It is the purpose of this act to establish a program which will, through emergency mortgage assistance payments, prevent widespread mortgage foreclosures and distress sales of homes which result from default caused by circumstances beyond a homeowner's control.