IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Yearick, III and         :
Tammie Yearick,               :
             Petitioners   :
                         :
           v.           :
                         :
Pennsylvania Housing Finance Agency, :   No. 2055 C.D. 2014
           Respondent   :   Submitted: April 2, 2015


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                 FILED: December 18, 2015


        Robert Yearick, III (Robert Yearick) and Tammie Yearick (collectively, the Yearicks), petition this Court for review of the Pennsylvania Housing Finance Agency (Agency) Hearing Examiner's October 18, 2014 decision affirming the Agency's May 8, 2014 denial of the Yearicks' application for emergency mortgage assistance under the act known as the Homeowner's Emergency Mortgage Assistance Program (HEMAP).[1]  The Yearicks present two issues for this Court's review: (1) whether the Agency erred by concluding that the Yearicks were not suffering financial hardship due to circumstances beyond their control, and (2) whether the Agency erred by finding that there was no reasonable prospect of the Yearicks resuming full mortgage payments within thirty-six (36) months from the date of the mortgage delinquency and paying the mortgage by maturity.  After review, we affirm.

---

[1] Act of December 3, 1959, P.L. 1688, added by Section 2 of the Act of December 23, 1983, P.L. 385, *as amended*, 35 P.S. §§ 1680.401c-1680.409c, 1680.412c.

The Yearicks own real property located at 410 Fairview Street in Avis, Pennsylvania (the Property). The Property is subject to a mortgage with a balance of $76,572.00. The Yearicks last made a mortgage payment on November 19, 2013. On April 14, 2014, the Yearicks applied for emergency mortgage assistance under HEMAP. The Yearicks' March 18, 2014 letter of circumstance (Letter of Circumstance) which accompanied the application, stated:

> Our problems started in Jan[uary] 2008 when Robert went to jail. When he did work in jail, the facility took most of his check for court fees and cost of living fees. When he got out of jail in April 2010, he had to live with his parents. In turn, he gave them money for staying there.
>
> In May of 2013, Robert's [employer] went bankrupt. His unemployment [compensation benefits] ran out in Jan[uary] 2014. [The] unemployment [e]xtension program has not been signed yet.
>
> What hurt us also was on Dec[ember] 30[th] 2012, I had a stroke. I was unable to return to work until April 2013. I was without pay for 4 months. I then was told I had cancer. My treatments ran from May-Nov[ember] 2013. I am not able to work at long times[.] [M]y legs swell up and I slow down. My restaurant is slow in winter, but I will be picking up more hours now that it is getting warmer.
>
> I receive the med card. I will be applying for food [and] money help and also for partial disability to help with our income.
>
> It is hard to catch up when I am so far behind.
>
> I have a hard time not over spending at the grocery stores. I started going to food banks to help me out.

Original Record (O.R.) at Item No. 27.

By May 8, 2014 notice, the Agency informed the Yearicks that the application had been denied based upon two factors:

> 1. Applicant is not suffering financial hardship due to circumstances beyond applicant's control based on:

2

Financial hardship is due to incarceration of mortgagor, homeowner or applicant[;] per homeowners' [Letter of Circumstance].

2. No reasonable prospect of applicant resuming full mortgage payments within thirty-six (36) months from the date of the mortgage delinquency and paying the mortgage(s) by maturity based on: Applicant[s'] income is insufficient to maintain mortgage. Applicants' total monthly expenses $1,458.76 exceed net monthly income $519.16 by $939.60.

O.R. at Item No. 36.

## FIRST APPEAL HEARING

By May 21, 2014 letter, the Yearicks appealed from the Agency's denial. A hearing was held before an Agency Hearing Examiner on June 19, 2014, at which time, the Yearicks testified regarding the circumstances surrounding their application. In her June 30, 2014 Notice of Decision, the Hearing Examiner summarized the Yearicks' testimony and specifically described Tammie Yearick's testimony as follows:

The Appellant, Tammie Yearick, suffered a stroke on December 30, 2012. She was unable to return to work until April 2013. She had no income during this time. She was diagnosed with cancer in May 2013 and underwent treatments from May to November 2013. Although she continued to work during the treatments, she was unable to work for long periods because her legs would swell. In addition, she missed days of work for the treatments.

Tammie Yearick's employer changed [its] work hours' policy, effective January 1, 2013. She is only able to work a maximum of 25 hours per week. She stated she usually works 45 hours per week. The Appellant applied for SSI benefits on April 29, 2014. She estimates a decision will take approximately 5 months. She has no idea what amount she would receive if approved. She stated she could be approved for full or partial disability.

3

Supplemental Reproduced Record (S.R.R.) at 24b.

Despite the fact that Robert Yearick was employed for **more than three years after his release from prison** until his employer ceased operations, and that Tammie Yearick's serious medical conditions resulted in her lack of, or reduced income, the Hearing Examiner concluded that it was Robert Yearick's incarceration from 2008 through 2010 that drained the Yearicks' financial resources and that, in the absence thereof, "their financial situation at the time of [his] job loss [in 2013] would have been more stable." S.R.R. at 26b. The Hearing Examiner further reasoned that Robert Yearick's "incarceration has been a direct factor in [his inability to] obtain[] employment. . . . Incarceration is not considered by the Agency to be a circumstance beyond the Applicant's control." *Id.* Finally, the Hearing Examiner concluded that, due to Robert Yearick's difficulty finding employment, there was no reasonable prospect of the Yearicks resuming full mortgage payments.

The Yearicks appealed from the Hearing Examiner's decision to this Court at No. 1502 C.D. 2014. However, by October 2, 2014 order, this Court vacated the Agency's order and remanded the matter to the Agency for a new hearing and adjudication because the Agency could not locate the hearing transcript.

**SECOND APPEAL HEARING**

A Hearing Examiner held a second hearing on October 9, 2014. In an October 18, 2014 decision, the Hearing Examiner referenced only the first paragraph of the Letter of Circumstance, excluding that portion of the letter describing Tammie Yearick's stroke and cancer. The Hearing Examiner further noted that Robert Yearick was employed through work release at Rafko Enterprises (Rafko) 40 hours per week while he was incarcerated. However, most of his income was used to pay for living expenses and costs associated with his incarceration. After his release in 2010, he lived with his parents and paid them approximately $100.00 per month. He

4

was required to attend counseling at a cost of approximately $50.00 per week. He continued to work for Rafko until it filed for bankruptcy in June 2013. Robert Yearick's income totaled $34,948.00 in 2011, resulting in an average net monthly income of $2,184.00; $35,545.00 in 2012, creating an average net monthly income of $2,284.00; and $19,621.00 in 2013 (the year he became unemployed), producing an average net monthly income of $1,226.00. Although Robert Yearick received unemployment compensation, those benefits were exhausted in January 2014.

> The Hearing Examiner also considered:
>
> Tammie Yearick has been employed at Burger King since April 2006. At application review, her average net monthly income was $519. A pay statement dated June 6, 2014 reflects gross year-to-date earnings of $4,239.51, $685.41 net per month after deductions for federal, state and local taxes. A pay statement dated September 26, 2014 reflects gross year-to-date earnings of $7,451.31 through September 20, 2014, approximately $697.51 net per month.
>
> Tammie Yearick applied for social security disability benefits in April 2014 but was denied benefits. Ms. Yearick stated she is planning to appeal the determination with the assistance of legal counsel.

S.R.R. at 3b. During the second hearing, the Yearicks did not offer testimony pertaining to Tammie Yearick's medical conditions or their impact on her income.[2] The Hearing Examiner found the Yearicks' $830.00 per month housing expenses consisted of a $678.00 per month mortgage payment and $152.00 monthly utility payments. In addition, the Hearing Examiner found the Yearicks' other monthly expenses to be $578.00. Thus, at the time of the hearing, their monthly expenses totaled $1,408.00. Concluding that the Yearicks had not demonstrated that they were suffering financial hardship due to circumstances beyond their control, and that there

---

[2] This, however, should not be held against the Yearicks as the reason for the second hearing was due to the Agency's failure to locate the transcript of the first hearing.

was no reasonable prospect of the Yearicks resuming full mortgage payments, the Hearing Examiner affirmed the Agency's mortgage assistance denial. The Yearicks appealed to this Court.[3]

The Yearicks first argue that the Agency erred by concluding that they were not suffering financial hardship due to circumstances beyond their control. We agree.

Section 404-C(a) of HEMAP states, in relevant part:

No assistance may be made with respect to a mortgage or mortgagor under this article unless all of the following are established:

. . . .

(4) The mortgagor is a permanent resident of this Commonwealth and **is suffering financial hardship due to circumstances beyond the mortgagor's control** which render the mortgagor unable to correct the delinquency or delinquencies within a reasonable time and make full mortgage payments.

(5) The [A]gency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within twenty-four (24)[4] months after

---

[3] "This Court's scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence." *R.M. v. Pa. Hous. Fin. Agency*, 740 A.2d 302, 305 n.2 (Pa. Cmwlth. 1999). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cullins v. Pa. Hous. Fin. Agency*, 623 A.2d 951, 953 (Pa. Cmwlth. 1993). An abuse of discretion is "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused." *Kelly v. Cnty. of Allegheny*, 546 A.2d 608, 610 (Pa. 1988) (quoting *Melzer v. Witsberger*, 480 A.2d 991, 997 n. 8 (Pa. 1984)).

[4] Section 405-C(f.1) of HEMAP states:

The twenty-four (24) month limit on assistance available under this act established in subsection (f) and referenced in [S]ections 401-C(a)(5), 403-C(f) and 404-C(a)(5) and (12) [of HEMAP] **shall**

6

the beginning of the period for which assistance payments are provided under this article and pay the mortgage or mortgages in full by its maturity date or by a later date agreed to by the mortgagee or mortgagees for completing mortgage payments.

. . . .

(10) For purposes of this section, in order to determine whether the financial hardship is due to circumstances beyond the mortgagor's control, **the [A]gency may consider information regarding the mortgagor's employment record, credit history and current income**.

35 P.S. § 1680.404c(a) (emphasis added).  Further, Section 31.205 of the Agency's Regulations provides, in relevant part:

(a) *General*. **The Agency will consider all relevant factors when evaluating** whether the homeowner is suffering financial hardship and **whether the financial hardship is due to circumstances beyond the homeowner's control**, including the following:

(1) The homeowner's past and present household income and **reasons for reductions in household income**.

. . . .

(4) The homeowner's employment history--including **unemployment, underemployment and the reasons therefore**--and eligibility for other types of financial assistance.

---

**increase to thirty-six (36) months** if during the month the homeowner submits an application for assistance the average rate of total unemployment in the Commonwealth, as seasonally adjusted, for the period consisting of the most recent three (3) months for which such data for the Commonwealth is published before the close of such month equals or exceeds six and one-half (6.5) percent.

35 P.S. § 1680.405c(f.1), added by Section 4 of the Act of December 21, 1998, P.L. 1258 (emphasis added).  It is undisputed that the thirty-six (36) month limit applies in the instant matter.

7

(b) *Examples.* **Examples of circumstances beyond the mortgagor's control** which result in financial hardship to the mortgagor include the following:

(1) **Unemployment or underemployment, through no fault of the homeowner**.

. . . .

(6) **Expenses related to** death or **illness in the homeowner's household** or of family members living outside the household which reduce the amount of household income.

. . . .

(e) *Cause of financial hardship.* **In determining the cause of the financial hardship, the Agency will determine whether the cause is one event--such as the loss of a job, separation or divorce, sickness or injury--or whether a series of factors beyond the homeowner's control, in combination, caused the financial hardship**.

12 Pa. Code § 31.205 (emphasis added).

The Agency's Hearing Examiner's October 18, 2014 order affirmed the Agency's May 8, 2014 order which denied the Yearicks' application for emergency mortgage assistance on the grounds: "Applicant is not suffering financial hardship due to circumstances beyond Applicant's control based on: **Financial hardship is due to incarceration of mortgagor, homeowner or applicant**." S.R.R. at 1b (emphasis added).

Pursuant to the Agency's Regulations, "the Agency will determine whether the cause is one event . . . or whether a series of factors beyond the homeowner's control, in combination, caused the financial hardship." 12 Pa. Code § 31.205. After a thorough review of the record, we hold that substantial evidence does not support the Agency's determination that Robert Yearick's incarceration was the sole cause of the Yearicks' financial hardship.

Although Robert Yearick's incarceration certainly impacted the Yearicks' finances, the **Yearicks continued to pay their mortgage until November 2013,[5] which was <u>three years and seven months after</u> his incarceration ended and <u>more than five months after</u> Robert Yearick became unemployed**. As the primary earner, Robert Yearick's job loss was because his employer ceased operations, and clearly was one in a series of factors beyond the Yearicks' control causing the Yearicks' financial situation. Further, although attributed to the "applicants," there is no evidence suggesting that any of the following was within Tammie Yearick's control: Robert Yearick's criminal conduct and his resulting job loss and incarceration; her December 30, 2012 stroke; her May 2013 cancer diagnosis (one month after her return to work in April 2013); and her husband's June 2013 job loss. Moreover, according to the Letter of Circumstance, Tammie Yearick's stroke and subsequent cancer diagnosis and treatment also significantly affected her ability to work at her part-time position, further negatively impacting the Yearicks' formerly sufficient financial resources.

The Hearing Examiner's conclusion that Robert Yearick's difficulties in obtaining subsequent employment were the result of his criminal conviction was based on conjecture. Although Robert Yearick did testify that he believed that his criminal record impacted his job search, his personal belief is not competent evidence of whether employers have, in fact, denied him employment on that basis. "Supposition and speculation founded upon a small sliver of proof does not constitute substantial competent evidence." *City of Phila. v. Worker's Comp. Appeal Bd.*

---

[5] On the Mortgage Information Sheet the Yearicks submitted to the Agency, the Yearicks answered "2/9/12" in response to the question: "List dates of other foreclosure notices sent to these homeowners." O.R. at Item No. 24. However, there is no discussion in the Hearing Examiner's decision, in the Yearicks' testimony, or in the Agency's brief pertaining to a February 9, 2012 foreclosure notice.

*(Kriebel)*, 29 A.3d 762, 772 (Pa. 2011). There is no tangible objective record evidence, such as rejection letters or statements of prospective employers, demonstrating that Robert Yearick was denied any job based on his criminal history. After a thorough review of the record, we hold that the Hearing Examiner's conclusion that the Yearick's financial hardship was due solely to Robert Yearick's incarceration is not based on substantial evidence. Accordingly, we conclude that the Agency erred in finding that the Yearicks were not suffering financial hardship due to circumstances beyond their control.

In addition to establishing that their financial hardship was due to circumstances beyond their control, the Yearicks were required to demonstrate that there was a reasonable prospect that they would resume full mortgage payments within thirty-six (36) months from the mortgage delinquency date and pay the mortgage in full by maturity. The Yearicks contend that the Agency erred when it concluded that there was no such reasonable prospect. We disagree.

Section 31.206(b) of the Agency's HEMAP Policy Statement provides, in relevant part:

> The Agency will generally determine that a homeowner demonstrates a reasonable prospect of resuming mortgage payments and paying the mortgage by maturity, despite his current unemployment, if the homeowner is suffering a financial hardship through no fault of his own and can demonstrate the following:
>
> (1) A favorable work and credit history.
>
> (2) The ability and history of paying the mortgage when employed.
>
> (3) The lack of an impediment or disability that prevents reemployment.
>
> (4) That he is actively seeking work, as evidenced by a written statement to that effect.

10

12 Pa. Code § 31.206(b). This Court further noted that:

> Satisfaction of these factors, however, does not necessarily compel the conclusion that a homeowner is qualified for mortgage assistance. Rather, the Agency is free to consider in toto those four factors, as well as others, and then, based on that guidance and their own judgment, decide whether an applicant is qualified for mortgage assistance.

*R.M. v. Pa. Hous. Fin. Agency*, 740 A.2d 302, 307 (Pa. Cmwlth. 1999).[6] "[T]he Agency cannot base its determination on speculative income." *Cullins v. Pa. Hous. Fin. Agency*, 623 A.2d 951, 954 (Pa. Cmwlth. 1993). "The Agency is bound to evaluate [the a]ppellants' eligibility on the basis of their actual income history." *Id.* Finally, "[i]t is within the discretion of the Hearing Examiner to conclude that [an applicant does] not meet the Section 404-[C](a)(5) eligibility criterion." *Mull v. Pa. Hous. Fin. Agency*, 529 A.2d 1185, 1188 (Pa. Cmwlth. 1987).

The record evidence demonstrated that Tammie Yearick's income was not nearly sufficient to pay the Yearicks' monthly expenses. The evidence further established that Robert Yearick had been unemployed for more than one year and had no pending job offers. Accordingly, any consideration of Robert Yearick's income from possible future employment would be speculative and thus, prohibited. *See Cullins*. Accordingly, based on the record evidence, the Hearing Examiner properly exercised her discretion when she concluded that there was no reasonable prospect that the Yearicks would resume full mortgage payments within thirty-six (36) months from the mortgage delinquency date and pay the mortgage in full by maturity. Therefore, we are constrained to affirm the Agency's decision.

For all of the above reasons, the Agency's decision is affirmed.

_____
ANNE E. COVEY, Judge

---

[6] In *R.M.*, this Court held that "Section 31.206 is a statement of policy, not a regulation, and thus does not have the force and effect of law." *Id.* at 308.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Yearick, III and : 
Tammie Yearick, : 
                Petitioners : 
                : 
             v. : 
                : 
Pennsylvania Housing Finance Agency, :    No. 2055 C.D. 2014
                Respondent : 

## O R D E R

AND NOW, this 18th day of December, 2015, the Pennsylvania Housing Finance Agency's October 18, 2014 order is affirmed.

 

_____
ANNE E. COVEY, Judge