# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sonia Gulino, : 
             Petitioner : 
             : 
             : 
      v. : 
             : 
Pennsylvania Housing Finance Agency, :   No. 821 C.D. 2020
            Respondent :   Submitted: April 9, 2021

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: May 13, 2021

Sonia Gulino (Gulino) petitions this Court, pro se, for review of the Pennsylvania Housing Finance Agency (Agency) Hearing Examiner's July 30, 2020 decision affirming the Agency's January 23, 2020 denial of her emergency mortgage assistance application under the portion of the Housing Finance Agency Law[1] known as the Homeowner's Emergency Mortgage Assistance Program (HEMAP/Act 91).[2] Essentially, Gulino presents one issue for this Court's review: whether the Agency erred by concluding that there was no reasonable prospect of Gulino resuming full mortgage payments within 24 months from the date of her mortgage delinquency and paying the mortgage by its maturity.[3] After review, this Court affirms.

---

[1] Act of December 3, 1959, P.L. 1688, *as amended*, 35 P.S. §§ 1680.101 - 1680.603a.

[2] Added by Section 2 of the Act of December 23, 1983, P.L. 385.

[3] In her Statement of Questions Involved, Gulino presented the following statements:

> 1. The [Agency] guidelines state[] that loans secured by liens on residential real property located in Pennsylvania to [sic] eligible

The facts in this case are not in dispute. Gulino owns real property at 2901 Hodle Avenue, Easton, Pennsylvania (Property).[4] According to Carrington Mortgage Services LLC's (Carrington) December 18, 2019 monthly mortgage statement, the unpaid principal balance on Gulino's mortgage for the Property was $338,447.86, her monthly mortgage payment was $1,832.78, and she made her last mortgage payment in September 2019. *See* Supplemental Reproduced Record (S.R.R.) at 24b, 51b, 59b-60b. By December 19, 2019 Act 91 notice, Carrington informed Gulino that her mortgage was in default, and described steps Gulino could take to avoid foreclosure, including obtaining a HEMAP loan. *See* S.R.R. at 7b-9b.

By January 6, 2020 letter, Gulino notified Carrington that, after having withdrawn her $55,000.00 pension in 2018 to cover her household expenses, she did not have the money to make her mortgage payments after September 2019 because her employer was "not giving overtime." S.R.R. at 55b; *see also* S.R.R. at 25b-26b.

---

homeowners who are in imminent danger of losing their home through foreclosure.

2. An eligibility criteria regarding the likelihood that the mortgagor will be or will not be able to resume full mortgage payments within 24 months after the beginning of the period for which assistance payments are provided under HEMAP and pay [sic] the mortgage or mortgages in full by its maturity date.

Gulino Amended Br. at 1. Gulino's issues are incomplete statements. However, in the Argument portion of her brief, Gulino references that "[the] law states that if a lien is placed on the home and if [sic] able to pay the Mortgage in two years then there should be a favorable decision of [the Agency] making 24 months of mortgage payment[s]." Gulino Amended Br. at 2. To the extent Gulino challenges the Agency's assessment regarding the sufficiency of evidence of her future payment prospects, it is encompassed in this Court's restated issue and will be addressed accordingly herein.

[4] The Property was deeded to Gulino and her mother, Aurea Gulino, as joint tenants with the right of survivorship, on January 10, 2000. *See* Supplemental Reproduced Record (S.R.R.) at 47b-50b. Thereafter, Gulino and her mother originated the Property's mortgage. Gulino's mother passed away in 2008. *See* Reproduced Record (R.R.) at 3a; *see also* S.R.R. at 23b-24b; Agency Br. at 5.

2

However, she "was planning to go back to [n]ursing school to increase [her] income." S.R.R. at 55b.

On January 14, 2020, Gulino had a face-to-face meeting with a credit counseling agency during which she completed a HEMAP loan application and a Letter of Circumstance. *See* S.R.R. at 10b-12b, 51b-54b, 56b. Therein, Gulino represented that her net monthly income was $2,450.66, and her monthly expenses were $3,802.14 (consisting of: $460.32 in payroll deductions; $2,201.78 in housing expenses; $490.00 in living expenses; and $650.04 in installment payments (i.e., auto loan/credit cards)), and she had no savings to apply to her debts. *See* Reproduced Record (R.R.) at 4a-6a;[5] *see also* S.R.R. at 26b-27b, 51b-64b. In the Letter of Circumstance, Gulino also declared that she was "going back to school to become a nurse so she can increase her income" and "[a]lso [] seeking a part[-]time position to increase income now."[6] S.R.R. at 54b.

The Agency received Gulino's application on January 15, 2020. *See* S.R.R. at 11b. The Agency's loan officer reviewed Gulino's income, including her 2016, 2017 and 2018 tax returns, her most recent paystub, and her housing expenses, living expenses, and debts as Gulino initially reported them.[7] *See* S.R.R. at 26b-34b. On January 23, 2020, the Agency denied Gulino's application because:

> 1. [Gulino had n]o reasonable prospect of [] resuming full mortgage payments within twenty-four (24) months from the date of the mortgage delinquency and paying the mortgage[] by maturity based on: [Gulino's] income is insufficient to maintain [the] mortgage.
>
> 2. [Gulino had n]o reasonable prospect of [] resuming full mortgage payments within twenty-four (24) months

---

[5] Gulino did not number the pages in the Reproduced Record using a lower case "a" after the numerals, as required by Pennsylvania Rule of Appellate Procedure 2173. This Court will cite to the Reproduced Record in the proper format.

[6] Gulino did not produce any evidence that she ever obtained part-time employment.

[7] Gulino stated that she deferred her student loan payments. *See* S.R.R. at 33b-34b.

3

from the date of the mortgage delinquency and paying the mortgage[] by maturity based on: [Gulino's] income has been insufficient to maintain [the] mortgage for the past two (2) years.

3. Repayment of [the] mortgage assistance loan must be secured by a mortgage lien on the [P]roperty and by such other obligations as the Agency may require based on: [Gulino] refuses to secure Agency's loan with a mortgage lien. Not all owners are applicants.

S.R.R. at 14b.

On January 29, 2020, Gulino appealed, stating therein:

I am planning to go back to [s]chool as I have decided to get an Associates [Degree] in Dental Hygiene[,] as [the] starting salary is $70,000.00. I will be able to afford my [m]ortgage [p]ayments after 2 years. I also give permission to put a lien on [my] home.

I am asking for your help so that I can keep my home.

S.R.R. at 15b.

A hearing was held before the Hearing Examiner on February 20, 2020, at which Gulino testified that she was approved for a loan modification in August 2019, after not having paid her mortgage for approximately 12 months.[8] *See* S.R.R. at 25b. Gulino confirmed the income and expenses she reported on her HEMAP loan application. *See* S.R.R. at 26b-36b. The Hearing Examiner asked Gulino to submit her mother's death certificate and, in order to update her reported income and expenses, her two 2019 Internal Revenue Service Form W-2s,[9] her most recent paystub, and her last two bank statements. *See* S.R.R. at 31b, 36b.

Regarding her plan to return to school, Gulino explained:

---

[8] Prior to the loan modification, Gulino's mortgage payments were approximately $1,500.00 per month. *See* S.R.R. at 25b.

[9] Gulino's employer sent her a 2019 W-2, and also a corrected W-2. *See* S.R.R. at 30b-31b.

4

[Hearing Examiner]: Okay. And were you able to start nursing school?

[Gulino]: No. That's in the uh . . . That's in the uh works. That's what I'm saying, once I go back to school, I'll be able to afford, uh, my home so that's why I was applying, uh, for your help. And, also, uh, with the denial it was saying that I don't agree, um, for you to put a lien on the home. And that's incorrect. I was never asked, but I do agree. You could put a lien on the home, cause that wasn't a question on any of the applications.

. . . .

. . . and also [the loan officer] said that there wouldn't be enough, uh, income to support the mortgage in the 24 months, but that is incorrect because I'm applying to go back to school and then I'll be able to afford the mortgage.

. . . .

[Hearing Examiner]: . . . [W]hat do you mean, it's in the works?

[Gulino]: Well, I mean I have to go and, uh, you know, and apply to the different schools and see which ones accept me. So, it[']s all in the works. I haven't started attending any school, if that's what you mean. No. But that's what I plan to do.

S.R.R. at 27b-28b.

Based on Gulino's testimony and the paperwork she submitted at the Hearing Examiner's request, the Hearing Examiner calculated Gulino's average net monthly income at the time of the appeal hearing as $2,875.64, and her monthly expenses as $3,992.39 (consisting of: $563.52 in payroll deductions; $2,201.78 in housing expenses; $499.83 in living expenses; and $650.04 in installment payments).[10] *See* R.R. at 6a; *see also* S.R.R. at 3b-5b. On July 30, 2020, the Hearing Examiner affirmed the Agency's decision stating, in relevant part:

_____

[10] The Hearing Examiner calculated that Gulino's monthly expenses at the time of the hearing totaled $3,992.39. *See* R.R. at 5a-6a; *see also* S.R.R. at 4b-5b. However, $563.52 plus

5

> The overall monthly expenses totaled $3,802.14 at the date of application, versus th[e] average net monthly income of $2,450.66. The overall monthly expenses at the time of the appeal hearing totaled . . . [$3,915.17]. . . . [T]he average net monthly income at the time of the appeal hearing was $2,875.64, which remains insufficient to support [Gulino's] overall monthly expenses.
>
> The Agency believes that in order to successfully maintain the mortgage payments[,] no more than 40% of the average net monthly income should be required to support the housing expense. The housing expense of $2,201.78 represents over 100% of the average net monthly income during 2016, 2017, 2018 and 2019. The housing expense represents 90% of the $2,450.66 net monthly income at [Gulino's] application date and 77% of the $2,875.64 average net monthly income at the time of the appeal hearing. Thus, [Gulino's] income is insufficient to support the housing expense/mortgage payments.
>
> The tax returns exhibit that at no time since 2016 has [] Gulino's income alone been enough to support the mortgage payments or the overall monthly expenses. Therefore, based on the income history, the income as of application date, and the income at the time of the appeal hearing, it does not appear likely that [] Gulino will be able to resume and fully maintain the mortgage payments even if the account were to be brought current. In this context, the mortgage assistance loan was properly denied on the basis: No reasonable prospect of applicant resuming full mortgage payments within twenty-four (24) months from the date of the mortgage delinquency and paying [the m]ortgage[] by maturity.

R.R. at 6a; *see also* S.R.R. at 5b. Gulino appealed to this Court.[11]

---

$2,201.78 plus $499.83 plus $650.04 totals $3,915.17. Notwithstanding, Gulino's monthly expenses exceeded her monthly income.

[11] "[This Court's] review is limited to [determining] whether constitutional rights were violated, an error of law [was] committed, or the findings of fact are not supported by substantial evidence." *Fish v. Pa. Hous. Fin. Agency*, 931 A.2d 764, 767 n.3 (Pa. Cmwlth. 2007). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cullins v. Pa. Hous. Fin. Agency*, 623 A.2d 951, 953 (Pa. Cmwlth. 1993).

Preliminarily, Section 404-C(a) of Act 91 specifies:

No assistance may be made with respect to a mortgage or mortgagor under [Act 91] unless . . .

. . . .

5. The [A]gency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within twenty-four (24) months after the beginning of the period for which assistance payments are provided under [Act 91] and pay the mortgage or mortgages in full by its maturity date or by a later date agreed to by the mortgagee or mortgagees for completing mortgage payments.

35 P.S. § 1680.404c(a). Section 31.206 of the Agency's Regulations provides, in relevant part:

(a) In general, the Agency will consider all relevant factors when evaluating whether the homeowner has a reasonable prospect of being able to resume full mortgage payments within 24 months after the beginning of the period for which assistance payments are provided [by] the Agency[,] and [a reasonable prospect] of being able to pay the mortgage in full by maturity or by a later date agreed to by the mortgagee, including the following:

(1) The homeowner's prior work history, experience, training, opportunities for retraining and similar factors which may affect the homeowner's future employment opportunities.

(2) Potential for future changes in the homeowner's financial prospects through re-employment, schooling, training or debt reduction, or other income changes sufficient to enable the homeowner to resume full mortgage payments.

(3) Noncash benefits that may reduce household expenses, such as food stamps, free medical services for military or low-income families, a company-provided automobile, or receipt of food or clothing from family members living outside the household.

7

(4) Changes in income or recurring expenses, or both, that may be affected by changes in the age, composition or employment of members of the household.

(5) Potential for repayment of short-term or installment debt.

(6) Delinquencies in other debts which seriously jeopardize continued ownership of the home, which cannot be cured by a mortgage assistance loan.

(7) A homeowner's demonstrated ability to make regular monthly mortgage payments, even though those payments represented most of the homeowner's income. In determining whether the homeowner's future job and income prospects will be sufficient to enable the homeowner to pay the mortgage debt -- including principal, interest, taxes and insurance -- the Agency will take into consideration the amount of household income available to the homeowner for a reasonable period of time not to exceed 24 months prior to the circumstances which caused the mortgage delinquency and whether the income was sufficient as evidenced by documentation, including tax returns, Internal Revenue Service Form W-2 and tax transcripts. . . . In cases when nontaxable income is earned or financial government benefits are received, documentation evidencing receipt of the income or benefits shall be provided.

. . . .

(e) The homeowner shall provide sufficient information to allow the Agency to assess the homeowner's future ability to pay the mortgage debt. The Agency will base its decision on the information received from the homeowner or other sources. The lack of sufficient information from the homeowner which is reasonably available to the homeowner . . . may result in a denial of the application on the merits.

12 Pa. Code § 31.206.

Here, Gulino's sole argument is that she "is going back to school to study nursing and will be able to afford [the] mortgage payments."[12] Gulino Amended Br. at 2. Accordingly, Gulino appears to argue that the Hearing Examiner abused her discretion by not considering Gulino's anticipated nursing income in assessing her potential future ability to resume full mortgage payments. However, the law is clear that "[n]o assistance may be made . . . unless . . . [t]he [A]gency has determined that there is a reasonable prospect that [Gulino] will be able to resume full mortgage payments within twenty-four (24) months[.]" 35 P.S. § 1680.404c(a)(5). Moreover, this Court has ruled that "the Agency cannot base its determination on speculative income[.]" *R.M. v. Pa. Hous. Fin. Agency*, 740 A.2d 302, 308 (Pa. Cmwlth. 1999) (hearing examiner reasonably concluded homeowner's future income was speculative where there was no evidence as to when he expected to earn it, nor an explanation of why he had been previously unable to do so); *see also Barzilayev v. Pa. Hous. Fin. Agency* (Pa. Cmwlth. No. 242 C.D. 2016, filed August 17, 2016) (hearing examiner did not abuse her discretion by excluding from homeowner's monthly income calculation anticipated spousal support that was contingent on a possibility);[13] *Cullins v. Pa. Hous. Fin. Agency*, 623 A.2d 951 (Pa. Cmwlth. 1993) (hearing examiner properly considered only guaranteed income in calculating homeowners' monthly income, and not husband's representation that he anticipated beginning work at a department store and for a temporary agency, and

---

[12] The entire Argument portion of Gulino's brief consists solely of a reference to the Housing Finance Agency Law's purpose, and the following statements: (1) "[the] law states that if a lien is placed on the home and if [sic] able to pay the [m]ortgage in two years then there should be a favorable decision of [that Agency] making 24 months of mortgage payment[s;]" and (2) Gulino "gives permission for [the Agency] to place a lien on [the Property] and she is going back to school to become a [n]urse." Gulino Amended Br. at 2.

[13] This Court acknowledges that an unreported memorandum opinion may only be cited "for [its] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Barzilayev* is cited herein for its persuasive value.

wife's potential return to her former employment); *Phillips v. Pa. Hous. Fin. Agency*, 554 A.2d 607 (Pa. Cmwlth. 1989) (hearing examiner properly determined that homeowner's testimony that he may be entitled to Social Security Disability benefits and that he hoped to return to work was insufficient to establish a reasonable prospect of being able to resume full mortgage payments within the prescribed time); *Harman v. Pa. Hous. Fin. Agency*, 529 A.2d 1153 (Pa. Cmwlth. 1987) (hearing examiner did not abuse his discretion by refusing to include in homeowner's monthly income calculation her representations of projected future income from her decorating business).

Here, although Gulino notified the Agency and testified that she intended to go to nursing school, and despite years of struggling to pay her mortgage, she had not yet applied to nursing school, she failed to explain why she had not applied, and she presented no evidence as to when she might do so. Moreover, there was no guarantee that she would be accepted to or finish nursing school, or that she would obtain employment as a nurse. Under such circumstances, it was reasonable for the Hearing Examiner to conclude that Gulino's future nursing income was speculative.

The Hearing Examiner outlined Gulino's income and expenses and concluded that, although Gulino was employed, she earned insufficient income to meet her monthly expenses. Substantial record evidence supported the Hearing Examiner's determination. Because Gulino lacked a non-speculative source of new income, the Hearing Examiner properly determined that she lacked "a reasonable prospect" of being able "to resume full mortgage payments within twenty-four (24) months[.]" 35 P.S. § 1680.404c(a)(5).

10

For the above reasons, the Agency Hearing Examiner's decision is affirmed.

_____
ANNE E. COVEY, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sonia Gulino,              :
          Petitioner        :
                                :
        v.                  :
                                :
Pennsylvania Housing Finance Agency, :    No. 821 C.D. 2020
          Respondent     :

## O R D E R

AND NOW, this 13th day of May, 2021, the Pennsylvania Housing Finance Agency Hearing Examiner's July 30, 2020 decision is affirmed.


_____
ANNE E. COVEY, Judge